# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS, | : |
| Plaintiff, | : |
| | : C.A. No.: 1:22-cv-01132-CFC |
| v. | : |
| | : The Hon. Colm F. Connolly |
| NETFLIX, INC., | : |
| Defendant. | : |

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO TRANSFER
## PURSUANT TO 28 U.S.C. § 1404(a)

Dated: December 22, 2022

Thomas E. Hanson, Jr., Esq. (#4102)
BARNES & THORNBURG LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801-1050
Phone: (302) 300-3447
Email: thanson@btlaw.com

Rachel F. Strom (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
Lindsey B. Cherner (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Email: rachelstrom@dwt.com
    chelseakelly@dwt.com
    lindseycherner@dwt.com

*Attorneys for Defendant Netflix, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .............................................................................................................3

I.     THIS CASE COULD HAVE BEEN BROUGHT IN NEW YORK ..............3

II.    THE *JUMARA* FACTORS STRONGLY FAVOR TRANSFER ...................7

        A.     The Private Interest Factors Favor Transfer............................................7

        B.     The Public Interest Factors Favor Transfer............................................9

CONCLUSION ........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. High-Income Tr. v. Alliedsignal Inc.*,
 2002 WL 373473 (D. Del. Mar. 7, 2002) ............................................................. 9

*Boram Pharm. Co. v. Life Techs. Corp.*,
 2010 WL 2802727 (D. Del. July 14, 2010) .......................................................... 8

*Fairstein v. Netflix, Inc.*,
 2020 WL 5701767 (M.D. Fla. Sept. 24, 2020) ............................................. 2, 6, 7

*FG SRC LLC v. Xilinx, Inc.*,
 2021 WL 495614 (D. Del. Feb. 10, 2021) ............................................................ 8

*Hoffman v. Blaski*,
 363 U.S. 335 (1960) .......................................................................................... 1, 3

*Intellectual Ventures I, LLC v. Altera Corp.*,
 842 F. Supp. 2d 744 (D. Del. 2012) ..................................................................... 8

*Johnson v. TheHuffingtonpost.com, Inc.*,
 21 F.4th 314 (5th Cir. 2021), *cert. denied*, 2022 WL 17408173 (U.S. Dec. 5,
 2022) ..................................................................................................................... 6

*Jumara v. State Farm Insurance*,
 55 F.3d 873 (3d Cir. 1995) ............................................................................... 2, 7

*Marten v. Godwin*,
 499 F.3d 290 (3d Cir. 2007) ................................................................................. 6

*Shutte v. Armco Steel Corp.*,
 431 F.2d 22 (3d Cir. 1970) ............................................................................... 3, 4

*Unicredito Italiano v. JPMorgan Chase Bank*,
 2002 WL 1378226 (D. Del. June 26, 2002) ......................................................... 7

*Young v. New Haven Advocate*,
 315 F.3d 256 (4th Cir. 2002) ................................................................................ 6

**State Cases**

*Legros v. Irving*,
   327 N.Y.S.2d 371 (App. Div. 1971)...................................................................5

*Montgomery v. Minarcin*,
   693 N.Y.S.2d 293 (App. Div. 1999)...................................................................4

*SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*,
   94- N.Y.S.2d 525 (N.Y. 2012)...........................................................................4

**Federal Statutes**

28 U.S.C. § 1404(a) .......................................................................................1, 3

Pub. L. No. 112-63, 125 Stat. 764 (2011)................................................................1

**Rules**

CPLR 302(a)(1)...............................................................................................4

## **PRELIMINARY STATEMENT**

In her Opposition to the Motion to Transfer this case to her home state of New York, Williams does not identify a single event, witness, or document relevant to this case located in Delaware. Instead, she manufactures a new argument, never once raised at the parties' meet and confer, that she did not bring this case in New York because her counsel was concerned that New York did not have "absolute" or "unqualified" personal jurisdiction over Netflix, and that Netflix's consent during litigation to personal jurisdiction there is irrelevant. Williams' Opposition (the "Opp.") at 1-2, 4-5. Williams' post-hoc argument is wrong on both counts.

First, on the consent issue: Williams' Opposition argues that Netflix failed to grapple with the Supreme Court's 1960 decision in *Hoffman* and, for this reason, Netflix's consent to personal jurisdiction in New York is irrelevant. But, Netflix was not "blithely professing on the sly" (Opp. at 2), that it consents to jurisdiction in New York. Rather, Netflix was meeting the exact language of 28 U.S.C. § 1404(a), which was amended 50 years after *Hoffman* to permit transfer to any district to "which all parties have consented." *See* Pub. L. No. 112-63, 125 Stat. 764 (2011). Williams admits that she considered filing this case in her home state and Netflix is making it clear that it also consents to that jurisdiction.

Second, consent aside, there is no "real question" as to whether New York could have had personal jurisdiction over Netflix. A simple docket search confirms

1

that Netflix is a defendant in 35 cases pending in New York state and federal courts. Declaration of Lindsey Cherner at ¶ 2. One of those cases, discussed extensively in Netflix's Motion to Transfer, but completely ignored by Williams, is a defamation case transferred from the Middle District of Florida to the Southern District of New York using New York's long-arm statute and the 1404(a) factors, over the same arguments that Williams makes here. *See, e.g.*, *Fairstein v. Netflix, Inc.*, 2020 WL 5701767, at *6 (M.D. Fla. Sept. 24, 2020); Motion to Transfer (hereinafter "MTT") at 9. As in *Fairstein*, because Netflix researched the Series about New Yorkers in New York, and filmed there for months on end, there is no real doubt that personal jurisdiction over Netflix is proper in New York in this case.

Finally, as to convenience, Williams all but ignores Netflix's *Jumara* analysis, resting the majority of her argument on her forum preference, claiming it is still entitled to a "strong presumption of deference" notwithstanding that no event, document, or witness is located there, and as the parties agree, Delaware law does not apply. MTT at 13-14; Opp. at note 2. The Opposition ignores the prejudice that would result if key third-party witnesses are beyond this Court's trial subpoena power (one of whom, the title character, Anna Sorokin, is literally on house arrest in New York making her unavailability certain). It also minimizes the significant New York local interest in applying its own law to resolve a defamation claim arising from a New York controversy which allegedly harmed a New Yorker's reputation.

2

While it is puzzling that Williams does not want to litigate this case on her "home turf," it is clear that this case would be significantly more convenient there.

## ARGUMENT

### I.     THIS CASE COULD HAVE BEEN BROUGHT IN NEW YORK

Williams' only argument that this case could not "have been brought" in New York, as required by 28 U.S.C. § 1404(a), is that "it is not at all clear that either the New York long-arm statute or the Due Process Clause would have permitted the exercise of personal jurisdiction over Netflix." Opp. at 2. This newly conceived theory is just wrong.

Preliminarily, Williams takes pains to argue that Netflix's consent to personal jurisdiction is irrelevant. But the Supreme Court case she relies on has been abrogated by statute. Opp. at 4-5 (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)). For over a decade, under 1404(a), a court can transfer a case on consent—and Netflix consents.

Next, in her Opposition, Williams argues that there is a "real question" as to whether New York would have personal jurisdiction over Netflix by relying almost entirely on a highly distinguishable Third Circuit case, *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970). As a preliminary matter, *Shutte* involved a motion to transfer a personal injury claim brought by a decedent's estate to Missouri where "Plaintiff and her decedent were residents of Western Pennsylvania, the decedent

3

worked in Western Pennsylvania, and all of plaintiff's damage and expert liability witnesses resided in Western Pennsylvania." *Id.* at 25. Here, of course, Williams is a New Yorker and her alleged injury happened in New York. Further, at the time, "the legality of [Missouri's long-arm] statute had not been adjudicated, and there were strong doubts as to its validity." *Id.* at 24. Because of the understandable "substantial doubt" cast upon the then-new Missouri long-arm statute, the Third Circuit held it was "impossible" to accept that "plaintiff had an 'unqualified right' to bring her action against [the defendant] in the transferee district." *Id.* at 25.

But here, New York's long-arm statute, CPLR 302(a)(1), is not new nor is there any doubt as to its legal validity to obtain personal jurisdiction over out-of-state defendants. *See SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 94-N.Y.S.2d 525, 528 (N.Y. 2012) (New York's highest court affirming that personal jurisdiction over a non-domiciled defamation defendant commonly arises under CPLR 302(a)(1) when a "substantial relationship exists between a defendant's purposeful activities and the transaction giving rise to the defamation cause of action."). In fact, New York's long-arm statute has been used to secure personal jurisdiction over out-of-state defamation defendants for decades where the newsgathering at issue was done in New York and the publication was about a New Yorker. *See e.g.*, *Montgomery v. Minarcin*, 693 N.Y.S.2d 293 (App. Div. 1999) (allegedly defamatory news report researched over a six-week period, written,

4

produced and broadcast in New York was sufficient to establish the transaction of business within the state); *Legros v. Irving*, 327 N.Y.S.2d 371, 373 (App. Div. 1971) (personal jurisdiction over media defendant where "virtually all the work attendant upon publication of the book occurred in New York" including research and printing). The idea that New York "*never* permits its long-arm statute to be applied against out-of-state residents," (Opp. at 12), is made up. Indeed, to make this theoretical argument, Williams just ignores all of the facts set forth in Netflix's opening brief, including that Netflix worked on the ground in New York for over 100 days to film the Series and that it owns a production property in New York with over 150 New York employees. MTT at 5-6.

And it is all that ground-work that Netflix engaged in, and substantial New York production contacts that Netflix maintained in New York for this Series, that also makes Williams' due process argument meritless. Opp. at 6. Williams points out correctly that "[s]tate and federal courts around the country routinely reject personal jurisdiction in defamation cases over non-resident defendants on due process grounds, even when the plaintiff resides in the forum state." *Id*. at 6-7. But Williams does not cite a single case—because none exist—where due process prevented the exercise of personal jurisdiction over a non-resident defendant that went to the forum state and conducted substantial newsgathering in that forum. *Id.* (citing *Marten v. Godwin*, 499 F.3d 290, 294 (3d Cir. 2007) (defendants' conduct

5

was not expressly aimed at Pennsylvania for purposes of personal jurisdiction where defendants "never visited Pennsylvania"); *Johnson v. TheHuffingtonpost.com, Inc.*, 21 F.4th 314, 316 (5th Cir. 2021) (no reporting occurred in Texas and "story said nothing about Texas, nor did it rely on sources based in Texas or recount conduct that occurred in Texas"), *cert. denied*, 2022 WL 17408173 (U.S. Dec. 5, 2022); *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002) (no personal jurisdiction in Virginia by publishing online article that, in the context of Connecticut's policy of housing its prisoners in Virginia, allegedly defamed warden of Virginia prison)).  Indeed, the *Marten* case Williams relies on makes it clear that "[j]urisdiction is proper when the state of a plaintiff's residence is the focus of the activities of the defendant out of which the suit arises." 499 F.3d at 298.  And that is of course what happened here:  Williams lives in New York which is also where Netflix spent months filming this Series about New Yorkers, a New York trial, and a New York scandal.[1]  Thus, there is no "real question" that this case could have been brought in New York.

---

[1] Tellingly, in making her argument here, Williams ignores the *Fairstein v. Netflix* case even though it is directly on point here. MTT at 9.  There, the Middle District of Florida confirmed that the Southern District of New York was the proper forum, and under the long-arm statute, had personal jurisdiction over Netflix and the individual co-defendants—rejecting the same arguments Williams raised here. 2020 WL 5701767, at *6.  *Fairstein*, like this case, also involved a docudrama with New York-centric facts, a high-profile New York crime, and a plaintiff who was domiciled in New York at the time of publication. *Id.*

## II. THE *JUMARA* FACTORS STRONGLY FAVOR TRANSFER

There is one thing on which the parties agree: this motion is "not a battle of citations, but a battle of principle." Opp. at 1. The guiding principle, of course, is determining where this action is more convenient. And given that the parties also agree that no event, witness, or document is in Delaware, and that Delaware law does not apply here, this case would clearly be more convenient to litigate in New York, where Williams and most key third-party witnesses reside.

### A. The Private Interest Factors Favor Transfer

*First*, in claiming that her forum preference is entitled to substantial deference (Opp. at 8-11), Williams fails to distinguish the long line of cases holding that "[t]he state of incorporation matters little to the court's analysis of the transfer issue" especially where Delaware has no other relationship to the case and the proposed transferee forum is the nexus of the entire dispute. MTT at 11-12 (quoting *Unicredito Italiano v. JPMorgan Chase Bank*, 2002 WL 1378226, at *1 (D. Del. June 26, 2002)).

In fact, in pushing this argument, Williams only cites cases involving Delaware-incorporated ***plaintiffs***, where, of course, the plaintiffs had "perfectly legitimate" reasons for choosing to litigate in their home state. Opp. at 10-11; *see, e.g.*, *FG SRC LLC v. Xilinx, Inc.*, 2021 WL 495614, at *3-4 (D. Del. Feb. 10, 2021)

7

(explaining "Plaintiff's choice of forum [was] treated as a paramount consideration" because Delaware was also the plaintiff's "home turf"). That is not the case here.

*Second*, the parties agree that Netflix's preference favors transfer. Opp. at 13.

*Third*, Williams admits that her claim did not arise in Delaware, and instead tries to focus on California, the location of Netflix's principal place of business. Opp. at 13. While it is true that some of the research and relevant parties are in California, the center of gravity of this entire dispute is unquestionably New York, because a substantial portion of the researching, filming, and production for the Series occurred in New York, favoring transfer. *See Intellectual Ventures I, LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012) (factors weighed in favor of transfer where, *inter alia*, some research and development of allegedly infringing products occurred in the proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide).

*Fourth*, while Williams would like this Court to give "convenience to the *lawyers* . . . no weight at all," (Opp. at 15), at most that argument makes this factor neutral, putting the focus back where it should be—on the convenience of the parties and witnesses, none of whom are in Delaware. *See Boram Pharm. Co. v. Life Techs. Corp.*, 2010 WL 2802727, at *1-2 (D. Del. July 14, 2010) (finding that transfer was warranted even where defendant was a Delaware corporation because "[t]he critical factors in this case are the convenience of the parties and the witnesses").

***Fifth***, Williams tries to ignore that not a single relevant third-party witness is in Delaware by claiming that Netflix "does nothing to demonstrate that [the non-party witnesses] would actually be unavailable for discovery or trial." Opp. at 15. That is not true. To begin with, Exhibit A to the Strom Declaration states: "Anna Sorokin is on home confinement in New York City." Ex. A. As this case revolves around the nature of the relationship between Williams and Ms. Sorokin, Ms. Sorokin will be a critical witness for both parties' claims and defenses, yet she is legally unavailable to travel to Delaware to testify. Williams, on the other hand, fails to identify any third-party witnesses beyond New York's subpoena power, and instead, relies only on the location of *party* witnesses. Rufus-Isaacs Decl. Ex. 2; Opp. at 15. But, as this Court has long held: "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial." *Am. High-Income Tr. v. Alliedsignal Inc.*, 2002 WL 373473, at *5 (D. Del. Mar. 7, 2002). Thus, this critical factor strongly favors transfer to New York.

**B.     The Public Interest Factors Favor Transfer**

On the whole, Williams argues that the public interest factors are all neutral by ignoring literally all of the case law cited in the MTT and ignoring the actual facts

9

of this case.[2] Whatever her reasons for choosing to litigate away from her home state, it is simply not true that "Delaware, New York, and California share equally in the interest" of adjudicating this dispute. Opp. at 19. Nearly everything about this case is centered in New York, including the non-party witnesses, Williams' residence, and the law that will apply to this dispute. MTT at 12-19. All of these factors make this case considerably easier to litigate in New York and gives New York the greater interest in adjudicating a dispute with its own resident, where the majority of the Series was filmed, and applying its own law. *Id.* at 18-19.

## CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court transfer this action to the Southern District of New York.

---

[2] Williams does claim—without any authority—that it will take longer to litigate this case in New York. But Williams does not contest the actual data Netflix provided from the Federal Court Management Statistics from 2022 indicating that the relative administrative difficulty in the two fora resulting from court congestion is equal, making this factor neutral. *Compare* MTT at 15 note 3, *with* Opp. at 18-19.

10

|  |  |
|---|---|
| Dated: December 22, 2022 | BARNES & THORNBURG LLP |

*/s/ Thomas E. Hanson, Jr.*
Thomas E. Hanson, Jr. (No. 4102)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801-1050
Tel: 302-300-3474
Fax: 302-300-3456
Email:  Thanson@btlaw.com

DAVIS WRIGHT TREMAINE LLP
Rachel F. Strom (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
Lindsey B. Cherner (*pro hac vice*)
1251 Sixth Avenue, 21st Floor
New York, New York 10020
Tel: 212-402-4069
rachelstrom@dwt.com
chelseakelly@dwt.com
lindseycherner@dwt.com

*Attorneys for Defendant Netflix, Inc.*

## **TYPEFACE REQUIREMENT, PAGE LIMITATION, AND WORD COUNT CERTIFICATION**

Pursuant to the Standing Order regarding briefing in all cases, I, Rachel F. Strom, counsel for Defendant, hereby certify that the text for this memorandum of law in support of Defendant's motion to transfer uses 14-point font in Times New Roman. This filing also complies with the page and word limitations as set forth in this Court's Standing Order, containing 10 pages double-spaced and 2,477 words, as counted by the word processing system used to prepare this motion.

*/s/ Rachel F. Strom*
Rachel F. Strom