IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS, | |
| Plaintiff, | Civil Action No. 22-1132-CFC |
| v. | |
| NETFLIX, INC., | |
| Defendant. | |

# ORDER

Plaintiff Rachel DeLoache Williams has sued Defendant Netflix, Inc. based on Netflix's portrayal of Williams in its docudrama series *Inventing Anna*. D.I. 1 ¶ 1. Williams alleges that 16 sets of statements in the series either constitute a tort for false light invasion of privacy or, in the alternative, are defamatory per se. *See* D.I. 1. Pending before me is Netflix's Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 14). Netflix seeks to dismiss Williams's defamation claim under Rule 12(b)(6). It argues that the challenged statements are constitutionally protected opinions based on substantially true facts or alternatively that none of the statements are capable of defamatory meaning. D.I. 15 at 3. Netflix also seeks to dismiss Williams's false light claim because "New York does not recognize such a claim." D.I. 15 at 3.

As a preliminary matter, Williams concedes that New York law does not recognize claims for false light invasion of privacy. *See* D.I. 23 at 2 n.2 ("[Williams] [] accepts that New York does not recognize a false light claim and therefore does not oppose that part of [Netflix's] Motion"). I will therefore dismiss Williams's claim for false light invasion of privacy.

I will not, however, dismiss Williams's claim for defamation, which is brought under New York law. A successful defamation claim under New York law requires: (1) a false, (2) defamatory statement of fact, (3) published to a third party, (4) about the plaintiff, (5) made with the applicable level of fault, (6) either causing special harm or constituting defamation per se, and (7) not protected by privilege. *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001) (internal quotation marks and citation omitted).

"Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense." *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 42 (N.Y. App. Div. 2014) (citation omitted). If a statement "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," then the statement is substantially true. *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (N.Y. App. Div. 2015) (internal quotation marks and citation omitted). "Courts typically compare the complained of language with the alleged truth to determine whether the truth

would have a different effect on the mind of the average reader." *Id.* And a plaintiff "generally must identify how the defendant's statement was false to survive a motion to dismiss." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245 (2d Cir. 2017).

Further, a defamation lawsuit must be based on factual statements and not expressions of opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). "Opinions, . . . libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1306 (N.Y. 1977). Whether a particular statement is opinion or fact is a question of law for the court. *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020). To distinguish opinions from facts, the "dispositive inquiry . . . is whether a reasonable [viewer] could have concluded that [the statement at issue] convey[s] facts about the plaintiff." *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) (internal quotation marks and citation omitted). New York courts consider three factors in making this inquiry:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

3

*Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006) (citing *Gross*, 623 N.E.2d at 1167).

Finally, to determine whether a statement has defamatory meaning, courts must decide whether the statement tends to "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996) (quotation and citation omitted). "[T]he statement must do more than cause discomfort or affront; [it] is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).

Importantly, "[i]n evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole . . . ." *Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 579 (S.D.N.Y. 2022) (quotation and citation omitted).

Here, at least two sets of alleged defamatory statements are actionable at the motion to dismiss stage. Williams's 9th set of alleged defamatory statements reads as follows:

> After several scenes about the problems with the credit cards at the Hotel and the private museum tour, there is a long scene in which Noah is shown meeting Williams

4

> and suggesting to her that they leave immediately because of the "bad situation." At first, Williams says that the problems are over and suggests that they stay but Noah persists, and she gives in. She finds Anna who is alone in her room, drinking heavily and depressed. Williams tells her that they are leaving, making a bogus excuse. Sorokin begs her not to leave her, but Williams leaves anyway. She and Noah pack and leave the Hotel immediately, leaving Sorokin alone with a hotel guard stationed outside her room.

D.I. 1 ¶ 62. Williams's 10th set of alleged defamatory statements reads as follows:

> NEFF: Please, Rachel abandoned Anna. Kicked her when she was down, and left her alone in some foreign country. Rachel's happy to call herself Anna's friend when it meant free shit, trips to Morocco, but as soon as times got tough . . . Some friend.

D.I. 1 ¶ 66 (alteration in original). Williams plausibly alleges that both sets of statements are false statements of fact and defamatory. *See* D.I. 1 ¶¶ 64–65, 68–70. For falsity, she argues that Williams did not "abandon" Sorokin when Sorokin was "alone, depressed and in trouble" but rather that Williams told Sorokin she was leaving in advance, that Sorokin had company when Williams left, and that Sorokin did not appear to be upset. *See* D.I. 1 ¶ 64. For defamatory meaning, Williams argues that she "is falsely portrayed as a fair-weather friend who abandoned Sorokin when she was alone, depressed and in trouble in Morocco, and needed help and support" and that "[t]hese are negative personal traits or attitudes that Williams does not hold." D.I. 1 ¶ 65.

5

Netflix argues that these sets of statements are substantially true because

> Plaintiff did leave Morocco before Sorokin to go to France for work and vacation. And, before knowing Sorokin was a fraud, Williams also decided to "give the relationship some space." Thus, these scenes are substantially true. And debating if this makes Williams "disloyal," cannot be proven true or false.

D.I. 15 at 19 (citations omitted). But the above statements do more than simply show that Williams left Morocco prior to Sorokin or wanted to give the relationship space. As Williams alleges, the statements indicate that Williams "abandoned Sorokin when Sorokin was alone, depressed and in trouble in Morocco." D.I. 1 ¶¶ 63, 67. And whether Sorokin was in a troubled state and Williams left her at that point *can* be proven true or false.

Netflix alternatively argues that the 9th and 10th sets of statements are not defamatory, arguing that

> Plaintiff alleges these scenes are defamatory because they show Williams "abandon[ing] Sorokin" in Morocco. That is not what happens. When "Noah" suggests to Williams they leave Morocco because it seems unsafe, Williams pushes back, not wanting to leave Sorokin. But the Series shows Sorokin wholly unconcerned and uncaring as guards seem to threaten Williams and watch her every move. A reasonable viewer would not fault Williams or Noah for taking their safety seriously and ultimately choosing to leave. In this episode, Kacy also refers to Williams as "a real friend" and a "good person," further eliminating any defamatory meaning. And, while Neff criticizes Williams for leaving, the journalist character (based on Pressler) defends her, asking: "But

6

>>does a friend charge another friend's credit card without permission?"

D.I. 15 at 23–24 (alteration in original) (citations omitted). Netflix does not dispute that the scenes portray Williams leaving Sorokin when she was alone, depressed, and in trouble. Instead, Netflix points to other scenes in the series to show that the 9th and 10th sets of statements do not have defamatory meaning. But in context, these other scenes do not nullify the portrayal of Williams leaving Sorokin in a troubled state. Nor do they rectify the statements potentially "expos[ing] [Williams] to public contempt, ridicule, aversion or disgrace, or [to] induce an evil opinion of [her] . . . and [] deprive [her] of [] friendly intercourse in society" for abandoning a friend who is drinking heavily and depressed. *See Foster*, 665 N.E.2d at 157.

Accordingly, at least with respect to the 9th and 10th sets of statements, Williams has stated a cognizable defamation claim under New York law. And I need not decide at this stage of the pleadings whether the remaining alleged defamatory statements are actionable. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original) (citation omitted).

NOW THEREFORE, at Wilmington on this Twenty-sixth day of March in 2024, it is HEREBY ORDERED that:

1. Defendant Netflix, Inc.'s Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 14) is GRANTED IN PART and DENIED IN PART; the Motion is GRANTED with respect to the First Claim for Relief and is DENIED with respect to the Second Claim for Relief; and

2. The First Claim for Relief is DISMISSED.

*[signature]*
CHIEF JUDGE