IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No.: 22-1132-CFC-EGT |
| v. | ) |
| | ) |
| NETFLIX, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT NETFLIX, INC.'S OPENING LETTER BRIEF IN SUPPORT
OF ITS MOTIONS TO COMPEL**

OF COUNSEL:

Rachel F. Strom
Chelsea T. Kelly
Lindsey B. Cherner
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
rachelstrom@dwt.com
chelseakelly@dwt.com
lindseycherner@dwt.com

Kelly E. Farnan (#4395)
RICHARDS LATYON & FINGER
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Netflix, Inc.*

Dated: September 6, 2024

Pursuant to this Court's Order (D.I. 83), Defendant Netflix, Inc. respectfully submits this letter brief requesting that this Court compel Plaintiff to produce two categories of documents: (1) financial data supporting her alleged damages, including her tax returns from 2018 to present (and a computation of said damages); and (2) relevant communications between Plaintiff and her boyfriend, parents, and other third parties—for which she and the third parties have improperly claimed attorney-client privilege.

**I.  Plaintiff Must Produce Documents Relevant to Her Alleged Harm as Well as a Proper Computation of Damages under Fed. R. Civ. P. 26**

Plaintiff filed this lawsuit claiming she was defamed by 16 scenes in Defendant's series, *Inventing Anna* (the "Series"). Plaintiff claims that the Series caused "damages to her earnings and/or potential earnings." D.I. 1 ¶ 146. Plaintiff also claimed she is entitled "to recover actual and presumed damages in an amount according to proof at trial but in any event in excess of the jurisdictional threshold of this Court." *Id.* ¶ 147. In a response to one of Defendant's interrogatories, Plaintiff claims that she suffered a "sharp decline in . . . earnings" after the Series streamed on Netflix. Ex. 1 at 30. Plaintiff's Rule 26(a) initial disclosures do not provide any further detail. In response to the rule's requirement that Plaintiff disclose a "computation of each category of damages claimed," Plaintiff simply stated that she "seeks only general damages in this lawsuit" and "incorporates the damages and relief set forth in her Complaint." Ex. 2 at 4.

In order to test Plaintiff's alleged damages, Defendant served her with two requests for production of documents seeking "[a]ll Documents relating to your earned income, including wages and investments, for the years 2018 to present" (Request No. 49) and a "copy of each of your federal tax returns from the years 2018 to the present" (Request No. 50). Ex. 3 at 37-38. Plaintiff objected, claiming they sought irrelevant information and "documents that would violate the Plaintiff [sic] privacy interests." *Id.* After Defendant repeated its request for Plaintiff's tax returns in a discovery letter dated July 9, 2024 (Ex. 4 at 2), Plaintiff reiterated her position that the tax returns are "privileged and irrelevant." Ex. 5 at 2.

Plaintiff cannot claim to have suffered financial harm and then prevent Defendant from testing the veracity of that allegation through reasonable discovery. Plaintiff has placed her financial information at issue by seeking damages claiming Defendant caused her financial harm, and Defendants do not simply have to take her word for it. *See Digiacobbe v. Sestak*, No. 14525, 1998 WL 684149, at *2 (Del. Ch. July 7, 1998) ("In order for the defendants to respond to claims in the complaint regarding lost good will and lost profits, it is necessary to have access to certain financial records, notably tax returns."); *see also DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 786 (3d Cir. 1974) (affirming sanctions where plaintiff failed to produce all requested tax returns and properly respond to financial interrogatories); *see also Broome v. Int'l Cruise & Excursions Gallery, Inc.*, No. 18CV4598DLICLP, 2019 WL 13144879, at *2 (E.D.N.Y. Nov. 21, 2019) (noting parties agreed "documents relating to plaintiff's alleged damages and earning potential, including tax returns, W-2s, 1099s, and W-4s" were "discoverable and relevant" to establishing "the basis for plaintiff's claims for damages"). Plaintiff's tax returns in particular are critical because they provide an overview of all income Plaintiff earned both shortly before and after the Series was released—*i.e.*, the most precise evidence of whether Plaintiff did, in fact, suffer a "sharp decline in . . . earnings" as a result of the Series. *See Julicher v. Town of Tonawanda*,

1

No. 06-CV-0707S(Sr.), 2008 WL 4415226, at *5 (W.D.N.Y. Sept. 24, 2008) (in defamation case, granting defendant's motion to compel plaintiffs to produce "documents showing income earned or received by plaintiffs from October 1, 2005 to the present," finding plaintiffs' production of their 2006-2007 tax returns was insufficient).

Plaintiff has provided no case law to support her argument that her tax returns and other financial documents are private or privileged—and, indeed, the exact opposite is true. "Tax returns in the possession of the taxpayer are not immune from civil discovery." *Hawkins v. MedApproach Holdings, Inc.*, 326 F.R.D. 391, 393 (S.D.N.Y. 2018). If privacy is the concern, the Court already entered a Stipulated Protective Order in this case, by which Plaintiff can mark her tax returns and any other allegedly sensitive financial information as "Confidential." D.I. 41. *See Airport Equities, LLC v. Iacono*, No. CV S19C-04-016 ALR, 2020 WL 5048524, at *1 (Del. Super. Ct. Aug. 26, 2020) (granting motion to compel discovery of tax returns, noting "a confidentiality agreement by the parties will suffice to protect the privacy concerns arising from discovery of the documents").

Plaintiff has also failed to comply with her obligation under Federal Rule of Civil Procedure 26(a) to provide initial disclosures that include "a computation of each category of damages" and "the documents or other evidentiary material . . . on which each computation is based . . . ." Courts in this District have held that, to comply with Rule 26, a plaintiff "must provide 'a meaningful articulation of the bases' for its damages contentions, the documents that support those bases, and 'a narrative explanation as to how [that] information ... shed[s] light on' its damages contentions." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2021 WL 12160836, at *4 (D. Del. Oct. 22, 2021).

Even if Plaintiff had produced her tax returns by now (she has not), such production alone would be insufficient to comply with this obligation. *See id.* at *3 ("[T]he disclosure required by Rule 26(a)(1)(A)(iii) requires 'more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents.'"); *see also Jacobs v. Oppenheim*, No. 12 CV 7250(VB), 2015 WL 5460104, at *8–9 (S.D.N.Y. June 17, 2015) (noting, "Plaintiff's tax returns, alone, certainly do not constitute a computation of damages" and ordering plaintiff "to provide to defendant a computation of damages, as contemplated under Rule 26, for plaintiff's surviving defamation claim"). Plaintiff's simple assertion that she "seeks only general damages in this lawsuit" and "incorporates the damages and relief set forth in her Complaint" (Ex. 2 at 4) leaves Defendant guessing as to what damages Plaintiff claims, which is far from sufficient to meet her Rule 26 obligations. Defendant respectfully requests that the Court order Plaintiff to produce documents in response to Defendant's Requests for Production Nos. 49-50 and to supplement her Rule 26 disclosures to include "a computation of each category of damages" and "the documents or other evidentiary material . . . on which each computation is based . . . ."

## II. Plaintiff Improperly Withheld Numerous Communications with Her Boyfriend, Parents, and Others, on the Basis of Attorney-Client Privilege.

Plaintiff and third parties represented by Plaintiff's counsel have withheld relevant communications on the basis of the attorney-client privilege even where non-attorneys were included on the communication. *See* Ex. 6 (highlighted entries on Plaintiff's and third parties' privilege logs). The highlighted entries on the privilege logs include communications with

Plaintiff's boyfriend (Jimmy Zumot), parents (Laurie and Joshua Williams), and former colleague at Vanity Fair (Kathryn Schafer).  None of these individuals are lawyers.  When Defendant specifically questioned Plaintiff's grounds for withholding Mr. Zumot's communications with Plaintiff as attorney-client privileged (Ex. 4 at 2), Plaintiff's counsel responded that "Mr. Zumot was assisting Ms. Williams with communicating with her counsel in connection with the lawsuit." (Ex. 5 at 3).[1]  Of course, Ms. Williams is free to consult with whomever she pleases, but that does not turn her personal friends into attorneys.  And for this reason, Defendant now moves to compel the production of these improperly withheld communications.

"The attorney-client privilege protects only the communications made by a client to his or her attorney in order to obtain legal advice or services." *Butz v. Lawns Unlimited Ltd.*, No. CV 05-495-JJF, 2007 WL 9811132, at *2 (D. Del. July 25, 2007).  "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), *as amended* (Oct. 12, 2007).  Except in situations unlike here, where the parties are aligned in creating a joint project or share a common interest or joint defense, "[d]isclosing a communication to a third party unquestionably waives the privilege." *Id.*

Here, Plaintiff has withheld communications between herself and her boyfriend, parents, former colleague, and others—none of whom are lawyers. *See* Ex. 6.  Even where these communications included Plaintiff's lawyer and/or alleged attorney-client privileged advice, Plaintiff waived the privilege by disclosing such communications to these third parties. *See, e.g.*, *Robocast, Inc. v. Apple, Inc.*, No. CV 10-1055 (RGA), 2013 WL 12147601, at *5 (D. Del. July 19, 2013) (communications with third-party investor, fundraiser, and wife of plaintiff-company's employee waived the privilege).  Plaintiff then waived the privilege a second time by producing other communications that appear substantially similar to certain withheld communications in her privilege log.[2]  Defendant respectfully requests that the Court order Plaintiff to produce the highlighted communications on these privilege logs. *See id.*

---

[1] Over the meet-and-confer call with Plaintiff's counsel and both parties' local counsel on August 7, 2024, Defendant's counsel informed Plaintiff's counsel that Defendant also intended to move to compel Plaintiff's withheld communications that involved other third-party non-lawyers (beyond only Mr. Zumot).

[2] *Cf.* Ex. 7 (produced email exchange between Plaintiff and Mr. Zumot titled "8668.3.1 Rachel Williams Complaint 081922," in which Mr. Zumot provides feedback on the draft complaint for this lawsuit), *with* Ex. 6 at 5 (highlighted entry on Mr. Zumot's privilege log from August 21, 2022—email exchange between Mr. Zumot and Plaintiff, described as "Email from JZ to RW re Complaint Notes"). *See Micron Tech., Inc. v. Rambus Inc.*, No. CV 00-792-KAJ, 2006 WL 8452036, at *25 (D. Del. Mar. 6, 2006) ("[T]urning over materials to an adversary waives privilege even if the disclosure is subject to a confidentiality agreement") (citing *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988)).

                                                                      Respectfully,

                                                                      */s/ Kelly E. Farnan*

                                                                      Kelly E. Farnan (#4395)

Attachments
cc:     Counsel of Record (w/e) (By CM/ECF)