

September 6, 2024

**VIA E-FILING**
The Honorable Eleanor G. Tennyson
J. Caleb Boggs Federal Building
844 N. King Street
Unit 38, Room 4104
Wilmington, DE 19801-3555

Re: <u>*Williams v Netflix, Inc.,* **C.A. No. 22-cv-1132-CFC-EGT**</u>

Dear Judge Tennyson:

Plaintiff asserts claims for defamation and false light invasion of privacy against Netflix for statements about her in the Netflix series *Inventing Anna* ("<u>Series</u>") about a fraudster named Anna Sorokin ("<u>Sorokin</u>"). The Series falsely portrayed Plaintiff as (1) a freeloader/false friend, (2) a snob, (3) abandoning Sorokin in Morocco, (4) deceiving friends about her role in the Sorokin's arrest, and (5) misusing her business AmEx to pay for Sorokin's expenses. (D.I. 1). Plaintiff respectfully submits this letter brief seeking an order compelling Netflix to provide further responses to Plaintiff's interrogatories and document requests.

**Williams Seeks Supplementary Responses To Interrogatories Nos. 2, 3, 4, 5, 6, and 8.**
Despite discovery having been in progress since June 2023, Netflix refuses to provide its contentions in response to interrogatories 2 (statements constituting opinion), 3 (statements incapable of defamatory meaning), and 4 (Netflix did not act with malice).  Rule 33 allows for contentions and there is no reasonable basis for Netflix's failure to provide its contentions.

Netflix also refuses to answer Interrogatories 5 (gifts Sorokin gave to Plaintiff) and 6 (items paid by Plaintiff for her and Sorkin's benefit) which seek the basis for Netflix's false statements that Plaintiff was a freeloader – a core claim in this case.

Netflix also refused to answer Interrogatory 8 (details of any witness interviews).  Netflix has objected based on the attorney client privilege but has not provided any information about the interviews, which makes it impossible to determine whether its assertion is justified.

**Netflix's Improper Assertion of Attorney Client Privilege**.  Netflix provided a privilege log for documents it withheld as privileged, mostly under the attorney client privilege. Williams seeks to compel production of: (1) those documents for which Netflix provided insufficient information in the log to satisfy FRCP Rule 26(b)(5); (2) communications between Netflix lawyers and Shondaland[1] (over which Netflix asserted the joint defense privilege); (3) communications between Netflix lawyers and The Joan Pearce Research Agency ("<u>JPRA</u>"); (4) communications between Netflix lawyers and third parties who are not employed by Netflix,

---

[1] Shondaland is a production company that produced the Series together with Netflix.

Shondaland or JPRA; and (5) communications between (a) Netflix personnel who are not lawyers and (b) other Netflix non-lawyers or Shondaland employees or third parties.

The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients. *Jaffee v. Redmond*, 518 U.S. 1, 11, 116 S. Ct. 1923, 1929, 135 L. Ed. 2d 337 (1996). Therefore, communications between non-lawyers in category 5 cannot be privileged. The other 4 categories consist of voluntary disclosures of purportedly privileged communications to Shondaland, JPRA and others not employed by Netflix. Such disclosures have long been considered inconsistent with an assertion of the privilege and constitute a waiver. *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C. Cir.1980). The joint defense privilege is an exception to this general rule but the consent of all parties who share the privilege is required before waiver can occur. Id. Moreover, the privilege only applies to communications between actual or potential co-defendants and their attorney for any common defense purpose. *Polycast Technology Corp. v. Uniroyal, Inc.,* 125 F.R.D. 47, 50 (S.D.N.Y. 1989). And thirdly, the parties must reasonably believe, at the time the communications are made, that the communications are intended to further the parties' joint defense. Id. Under New York law, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). The same is true under federal law. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989). Thus, Netflix bears the burden of showing that each of three underlined factors apply.

**Netflix's Improper Assertion of Reporter's Privilege**. Netflix produced documents in two tranches, many of which contain redactions, and provided two privilege logs, one for each tranche.[2] Most of its objections assert the reporter's shield privilege under New York Civil Rights Law §79-h, which protects professional journalists from contempt citations when they refuse to disclose information obtained by them during the course of their reporting. (*Guice–Mills v. Forbes,* 12 Misc. 3d 852, 854, 819 N.Y.S.2d 432 (Sup. Ct. 2006)).

Netflix claims the privilege because the Series is based on an article about Sorokin in *New York Magazine* ("Article") written by a journalist called Jessica Pressler who was subsequently hired by Netflix to work on the Series. But a party can only assert the privilege if it can show an agreement by both the journalist and the source about the confidentiality of the latter's identity or about the information provided. See *Fowler v Vary*, 2022 WL 3211638, *9 (S.D.N.Y. 2022): "New York courts have interpreted Section 79-h(b) to require direct or indirect evidence of an express or implied agreement or understanding that confidential material will not be disclosed. (Cites omitted). An understanding or agreement can be implied only where it is reasonable to conclude that both the journalist and the source, from their acts and conduct and the circumstances, mutually intended for the source's identity or information to remain confidential.

---

[2] Color coded versions of the logs identifying the documents in each of these categories are attached as exhibits – the color coding key is on page 2 of each log. Exhibit 1 is the log for the documents that Netflix has withheld; Exhibit 2 is the log for the documents in Netflix's first production that it redacted; and Exhibit 3 is the log for the documents in Netflix's second production that it redacted.

In other words, even if it were apparent that a source desires to remain anonymous or avoid disclosure, the requisite 'cloak of confidentiality' still may be absent if the source does not 'rely upon [the journalist] to shield' the information. (Cite omitted)." Thus, the burden is on Netflix to establish that such an agreement was reached.

Moreover, information gathered by a journalist in preparation of a news story can be obtained by demonstrating that the journalist voluntarily disclosed or consented to disclosure "of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section" (§ 79–h(g); *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 241 F.R.D. 202, 204 (S.D.N.Y. 2007).) In this case, Ms. Pressler waived the privilege with respect to any information she learned during the course of writing the Article because she voluntarily disclosed that information to Netflix and Shondaland and others working on the Series who had no connection to the Article (save that they were making a drama series based on the same facts). Many redactions appear in documents that were neither written by Ms. Pressler nor given to her by a source, including draft scripts and outlines written by other people (and likely not even sent to Ms. Pressler), production schedules, and cast lists whose authors and circulation lists are unknown.

By way of illustration, *Guice-Mills v. Forbes*, supra, arose out of a controversy within a church about whether its minister was mismanaging its funds. In the course of preparing a report about the alleged mismanagement, a professional journalist uncovered information regarding a church member's prior criminal conviction. The journalist could have claimed a privilege not to disclose it but he waived that privilege by voluntarily disclosing to the member that he had learned of her conviction from the minister. This meant that the member could compel the journalist to disclose this information in support of her own claims against the minister for allegedly attempting to humiliate and intimidate her from criticizing his management of church by distributing copies of her conviction among members of congregation.

**Williams Seeks Production of Contracts Between Netflix and Shondaland**. Netflix refuses to produce its contracts with Shondaland pertaining to the Series (Request 36) and pre-contract communications (Requests 30 and 31) claiming the information is confidential. This argument fails because of the Protective Order that has been entered. The documents are relevant to the relationship between the two entities, such as whether an agency relationship exists, Netflix's involvement in creative decision-making and approval rights, and indemnity obligations.

**Williams Seeks Supplementary Responses By Netflix To Requests For Production**. Rule 34(b)(2)(B)(C) requires Netflix to state for each request that inspection will be permitted as requested or the grounds for objecting to the request. Netflix's Responses do not comply with this rule. Instead, Netflix objects to each request with the caveat "[n]otwithstanding these objections, Netflix will produce copies of nonprivileged documents responsive to this Request to the extent they were obtained or reviewed in the course of working on the Series and to the extent they are within Netflix's possession, custody, or control." It is not clear from this wording whether or not Netflix located <u>any</u> documents in response to the Request and has produced them.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (Via E-Filing)