# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS,   )<br>                                                          )<br>            Plaintiff,              )<br>                                                          )   C.A. No.:  22-1132-CFC-EGT<br>       v.                                          )<br>                                                          )<br>NETFLIX, INC.,                          )<br>                                                          )<br>            Defendant.             )  | |

## DEFENDANT NETFLIX, INC.'S OPPOSITION TO PLAINTIFF'S DISCOVERY LETTER-MOTION

OF COUNSEL:

Rachel F. Strom
Chelsea T. Kelly
Lindsey B. Cherner
Olalekan N. Sumonu
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 489-8230
rachelstrom@dwt.com
chelseakelly@dwt.com
lindseycherner@dwt.com
osumonu@dwt.com

Dated:  September 10, 2024

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Netflix, Inc.*

Dear Judge Tennyson:

## I. Plaintiff Is Not Entitled to Supplementary Responses to Netflix's Interrogatories.

Plaintiff incorrectly claims Netflix failed to respond to Interrogatories Nos. 2-6 and 8. In actuality, for Nos. 2-6, Netflix identifies: (1) portions of Plaintiff's book, article, and trial testimony that support Netflix's defenses; (2) individuals who may have additional relevant knowledge; and (3) documents containing further support. (Ex. 1.) For No. 8, any "interviews" Netflix conducted "for purposes connected to the lawsuit" are attorney-client privileged.

## II. Netflix Properly Asserted Attorney-Client Privilege.

The documents Plaintiff challenges from Netflix's privilege logs were properly withheld or redacted under three independent theories: the attorney-client privilege and the common interest and work product doctrines:

***First***, Plaintiff contends the yellow-highlighted entries fail to provide sufficient information to assess the nature of the privilege because they do not contain sender or recipient data. There is no such data for these documents—they are Netflix's attorney work files. Netflix in-house counsel Simron Gill explains these entries consist of work product and other documents (such as draft scripts and research), which Gill kept in her own files to conduct her legal analysis of *Inventing Anna* (the "Series"). Ex. 2 ¶ 14. These documents contain Gill's notes, legal advice, and/or were provided to her for the purpose of providing legal advice.

***Second***, Plaintiff apparently argues Netflix waived privilege over communications: (1) between Netflix lawyers and Shondaland employees (blue highlights on Plaintiff's Ex. 1); (2) between Netflix lawyers and the Joan Pearce Research Agency ("JPRA") (green highlights); and (3) between Netflix lawyers and consultants hired by Netflix or Shondaland to research, write, produce, and clear the Series (red highlights). Regardless of what law applies, these documents remain protected by the attorney-client privilege and the work product doctrine. Communication with the production and consultants was necessary for Netflix counsel to deliver her legal advice. Ex. 2 ¶¶ 8-12. And, in any event, the common interest doctrine protects against any waiver here.

The attorney-client privilege allows Netflix lawyers to disclose privileged information to "third persons … who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted …." Cal. Evid. Code § 952.[1] Netflix engaged Shondaland to research, write, develop, and produce the Series, which Netflix then distributed on its streaming platform. Ex 2 ¶ 3. As part of their agreement, Shondaland agreed to help Netflix execute a risk assessment (or pre-publication legal review) to evaluate and minimize legal risks of distributing the Series. They also agreed to keep information regarding the Series confidential. *Id.* ¶ 4. Shondaland and Netflix, in turn, hired other individuals for the specific purpose of writing, directing, and otherwise developing the Series. *Id.* ¶¶ 9, 12.

Gill, who primarily conducted Netflix's legal review, explains that, in order to formulate her legal advice, it was necessary to communicate with other Netflix and Shondaland employees

---

[1] "Delaware courts use the … 'most significant relationship test'" to determine which state's privilege law applies." *Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Tr.*, No. 09-CV-0663 JCJ, 2011 WL 1636949, at *1 (D. Del. Apr. 29, 2011). Netflix, Shondaland, and JPRA are based in California, thus California attorney-client privilege applies. But, the outcome is no different under New York law, which Plaintiff cites. *See Berisha v. Lawson*, 973 F.3d 1304, 1317 (11th Cir. 2020) (applying New York law). The work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), governs all cases in federal court." *Penn. Mut. Life Ins. Co.*, 2011 WL 1636949, at *2.

and production contractors. *Id.* ¶¶ 8-13. These individuals possessed the background information that went into the scripts and/or were necessary to implement Netflix's legal advice. At all times, these individuals hired to work on the Series were under an obligation to keep the communications confidential. *Id.* ¶¶ 4, 12. Thus, communications with these individuals was both necessary "to further" Netflix's interest and "reasonably necessary" to accomplish "the purpose for which [Netflix lawyers were] consulted," *i.e.*, the legal review of the Series. Cal. Evid. Code § 952.[2]

Numerous cases in precisely this context hold that the attorney-client privilege protects communications between a publisher/distributor performing a pre-publication legal review of a creative project and the non-employee authors or creators. Applying New York law, the Eleventh Circuit recently confirmed that it could not find a single case that went the other way. *See Berisha*, 973 F.3d at 1317. In *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002), the Court underscores the importance of upholding the privilege in this context: given the "sporadic nature of employment in the motion picture industry," "which dictates the use of independent contractors over employees," the attorney-client privilege must be applied to confidential communications shared between a movie studio and independent contractors hired to write, direct, and produce a film.[3] *Id.* at *2.

These communications are also protected against waiver by the common interest or joint defense doctrine, under which "[p]ersons who possess common legal interests may share attorney-client privileged information without waiving the privilege." *Golden Door Props., LLC v. Super. Ct.*, 53 Cal. App. 5th 733, 781 (2020); *see also U.S. Bank Nat'l Ass'n v. APP Int'l Fin. Co.*, 33 A.D.3d 430, 431 (1st Dep't 2006). This doctrine requires that (1) the information shared with a co-party would otherwise be protected from disclosure; (2) the participants had a reasonable expectation that the information disclosed would remain confidential; and (3) the disclosure was made to advance their shared interest in securing legal advice on a common matter. *OXY Res. of Cal. LLC v. Super. Ct.*, 115 Cal. App. 4th 874, 890-91 (2004). All of these elements are easily met. Netflix and Shondaland agreed to confidentially cooperate in the joint defense of potential claims or legal actions arising from the Series. Ex. 2 ¶ 4. Their cooperation, assisted by those individuals they hired to work on the Series, was made to advance their shared interest in mitigating liability for the Series. *Id.* ¶ 8. Plaintiff herself threatened Netflix *and* Shondaland with legal action against Netflix, Shondaland, and "all other persons and entities affiliated with the Series …." *Id.* ¶ 6. Those working on the Series thus shared a common interest in defending against Plaintiff's threatened litigation and ensuring that the Series was legally sound.

The attorney work-product doctrine also protects these documents. The purpose of the pre-publication legal review is to advise on potential litigation—which Plaintiff herself threatened. Federal Rule of Civil Procedure 26(b)(3) prevents her from now discovering "documents and

---

[2] Gill's communications with JPRA—a research library specializing in legal clearances and fact-checking—were likewise entirely for the purpose of informing Netflix's pre-publication legal review, and are privileged. Ex. 2 ¶ 11.

[3] *See also Davis v. Costa–Gavras*, 580 F. Supp. 1082, 1098–99 (S.D.N.Y. 1984) (pre-publication legal conversation between a movie studio's lawyers and the author of the book that inspired the movie were privileged); *Tyne v. Time Warner Ent. Co.*, 212 F.R.D. 596, 600–01 (M.D. Fla. 2002) (disclosure of in-house legal advice from one movie studio to another involved in the joint production of a film protected); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1302 (D.D.C. 1988) ("Pre-publication discussions between libel counsel and editors or reporters would seem to come squarely within the scope of the [attorney-client] privilege as defined in *Upjohn*.").

tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *See also United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). In general, an attorney's pre-publication notes and communications are protected as work product. *See Tyne*, 212 F.R.D. at 601 (clearance legal advice conveyed between two movie studios engaged in joint production were "protected by the work product doctrine because they were developed in order to avoid, and eventually to defend against, threatened or anticipated litigation").

*Third,* Plaintiff challenges the magenta-highlighted entries, which reflect communications among Netflix employees—some of which include Netflix lawyers—and others which discuss advice from Netflix lawyers or identify issues to raise with Netflix lawyers. These documents are easily privileged. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (communications "between nonlegal employees in which the employees discuss or transmit legal advice given by counsel" and "[m]aterials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice" are privileged); Ex. 2 ¶ 13.

### III. Netflix Properly Asserted the New York Reporter's Privilege.[4]

Plaintiff challenges Netflix's redactions of journalist Jessica Pressler's confidential sources under the New York reporter's privilege (N.Y. Civ. §79-h)—sources that have nothing to do with Plaintiff or her portrayal in the Series. ***First***, Pressler's declaration, Ex. 3, makes clear she did not imply that any source would remain confidential, but instead promised confidentiality to specific sources who required that commitment. *Id.* ¶¶ 5, 9. ***Second***, Pressler did not waive her absolute right to keep this information confidential, N.Y. Civ. § 79-h(b), by disclosing her newsgathering to Netflix and Shondaland to create the Series. The parties agree waiver only occurs where a journalist provides newsgathering to other persons who are not "entitled to claim" the privilege. N.Y. Civ. § 79-h(g). In the one example Plaintiff provides, a journalist waived his privilege when he provided newsgathering to an individual who was not a journalist and not creating any creative work. *Guice-Mills v. Forbes*, 12 Misc. 3d 852 (Sup. Ct. N.Y. Cnty. 2006). That is not the case here. Pressler provided Netflix and Shondaland with her newsgathering to produce a creative work based on her newsworthy article. New York courts have long established the privilege applies to filmmakers, *see In re Application of Home Box Off., Inc.*, 64 Misc. 3d 566, 570–71 (Sup. Ct. N.Y. Cnty. 2019) (Dwayne "The Rock" Johnson entitled to the privilege), and "dramatists," *Von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144–45 (2d Cir. 1987).

### IV. Plaintiff Mischaracterizes the Record Regarding Netflix's Contracts.

Netflix offered to produce the agreements between Netflix and Shondaland that relate to the Series, as well as agreements with various third parties that relate to the Series, in order to resolve the dispute. Ex. 4 at 5-6. Plaintiff's counsel rejected this offer, without any real explanation.

### V. Plaintiff Is Not Entitled to Supplementary Responses to Netflix's Requests for Production

Netflix's responses to Plaintiff's RFPs (Ex. 5) comply with Rule 34 by stating whether Netflix agrees to produce documents responsive to each request to the extent they exist, or whether it objects. And, based on the phrasing of Plaintiff's requests, Netflix could not possibly identify which document falls into Plaintiff's subjective categories, such as whether a document "has a tendency to prove" various facts.

---

[4] Plaintiff does not contest that the New York reporter's privilege applies.

                                                      Respectfully,

                                                      */s/ Kelly E. Farnan*

                                                      Kelly E. Farnan (#4395)

Attachments
cc:  All Counsel of Record (w/e) (By CM/ECF)