# <u>EXHIBIT 1</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RACHEL DELOACHE WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | C.A. No.:  1:22-cv-01132-CFC |
| v. | : | |
| | : | The Hon. Colm F. Connolly |
| NETFLIX, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT NETFLIX, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF RACHEL WILLIAMS'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant, Netflix, Inc. ("Netflix"), by and through its undersigned counsel, hereby responds and objects to Plaintiff Rachel Deloache Williams's First Set of Interrogatories ("Interrogatories") as follows.  Netflix reserves the right to correct, amend, modify, or supplement its responses and objections to these Interrogatories at any time in the future, as warranted by the circumstances.

## GENERAL OBJECTIONS

Netflix objects generally to the Interrogatories as set forth below.  Each of the responses that follow is made subject to these objections.  To the extent that Netflix responds to Interrogatories to which it objects, such objections are not waived.  In

addition, the inadvertent disclosure of privileged information shall not constitute a waiver of any applicable privilege.

1.       Netflix objects to the Interrogatories to the extent they, or the Definitions or Instructions contained therein seek to impose obligations beyond the scope permitted by the Federal Rules of Civil Procedure (the "Federal Rules") or the Local Rules of the United States District Court for the District of Delaware.

2.       Netflix objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, work-product privilege, common-interest privilege, joint defense privilege, reporter's privilege, or any other applicable privilege.

3.       Netflix objects to the Interrogatories to the extent they purport to require the disclosure of information that is protected by the N.Y. Civ. Rights Law § 79-h, the New York State Constitution, the First and Fourteenth Amendments to the U.S. Constitution, and any other statutory, constitutional, or common-law privilege that protects journalists from disclosing unpublished material and/or information obtained during the course of their newsgathering activity, including but not limited to the identities of their sources (collectively, the "reporter's privilege").

4.       Netflix objects to the Interrogatories to the extent they seek disclosure of information from persons or entities over whom Netflix has no control.

2

5.      Netflix objects to the Interrogatories to the extent that they seek information that is unduly burdensome to obtain.

6.      Netflix objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, unreasonably duplicative, unduly burdensome, oppressive, or harassing.

7.      Netflix objects to the Interrogatories to the extent that they seek information that is publicly available.

8.      Netflix objects to the Interrogatories to the extent that they are not limited in time and seek information from after Plaintiff filed her Complaint on August 29, 2022.

9.      Netflix objects to the Interrogatories to the extent that they seek confidential or proprietary information that Netflix maintains in confidence and/or is obligated to treat confidentially.

10.     Netflix objects to the Interrogatories as premature to the extent that they seek information related to opinion testimony or expert discovery, or information subject to pre-trial disclosures under the Federal Rules of Civil Procedure.

11.     Netflix objects to the Interrogatories to the extent that they seek material not relevant to any party's claims or defenses or proportional to the needs of the case, given the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and the burden or expense of this Request compared with its likely benefit.

12.     Netflix objects to the definition of the term "Filmmakers" as being vague with respect to its use of words such as "developed," "produced," "development," or "production;" and as being overbroad with respect to its definition of actors who appeared in the series *Inventing Anna* (the "Series") as including the actors' agents, managers, and lawyers.

13.     Netflix objects to the definition of the term "Shondaland" as being vague and overbroad insofar as it includes corporate entities other than Shondaland, Inc., as well as the officers, employees, agents, contractors, and other representatives of the same.  Netflix will construe the term "Shondaland" to mean "Shondaland, Inc." and its officers, employees, agents, contractors, and representatives.

14.     Netflix objects to the definition of the term "you" or "your" as being vague and overbroad insofar as it includes corporate entities other than Netflix, Inc., as well as the officers, employees, agents, contractors, and other representatives of the same.  Netflix will construe the term "Netflix" to mean "Netflix, Inc." and its officers, employees, agents, contractors, and representatives.

15.     Netflix's investigation is ongoing, and Netflix specifically reserves the right to correct, amend, modify or supplement its responses to the Interrogatories at any time in the future, as warranted by the circumstances.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

Subject to and without waiving the foregoing objections, Netflix responds as follows:

## INTERROGATORY NO. 1:

For each Defamatory Statement, identify every person who wrote or co-wrote the portion of the script in which the Defamatory Statement appears.

## ANSWER TO INTERROGATORY NO. 1:

Netflix objects to this Interrogatory as overbroad and vague regarding the phrase "portion of the script in which the Defamatory Statement appears." Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege. Netflix further objects to this Interrogatory to the extent that it seeks information beyond Netflix's possession, custody, or control. Netflix also objects to this Interrogatory to the extent that it seeks information that is publicly available. Netflix further objects to this Interrogatory as compound and containing numerous subparts.

Notwithstanding these objections, Netflix responds that the writers for the episodes in which the allegedly Defamatory Statements appear include[1]:

---

Netflix will be producing the final credits for each of these episodes, which list the writers named above. [2] Plaintiff titled this Interrogatory as Interrogatory No. 93. Netflix presumes that she meant Interrogatory No. 9, and so has re-titled it as such here.

| Episode | Writer(s) |
|---------|-----------|
| Episode 1 | Shonda Rhimes |
| Episode 2 | Matt Byrne |
| Episode 5 | Carolyn Ingber Lewinsky and Abby Ajayi |
| Episode 6 | Jess Brownell |
| Episode 7 | Abby Ajayi |
| Episode 8 | Nicholas Nardini |
| Episode 9 | Matt Byrne |

**INTERROGATORY NO. 2:**

State all facts, identify all documents, and identify all persons who have knowledge of facts which support or refute your contention that each of the Defamatory Statements constitutes constitutionally protected opinion based on substantially true facts.

**ANSWER TO INTERROGATORY NO. 2:**

Netflix objects to this Interrogatory to the extent that it calls for a legal conclusion and is otherwise overbroad and vague. Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege. Netflix further objects to this Interrogatory to the extent that it seeks

6

information beyond Netflix's possession, custody, or control—or information that Plaintiff already possesses.  Netflix also objects to this Interrogatory as premature, as additional responsive information and documents may be revealed throughout the course of discovery.  Finally, Netflix objects to this Interrogatory insofar as it attempts to shift the burden of proof to Netflix to prove substantial truth, when the law requires Plaintiff to prove falsity.

Notwithstanding these objections, Netflix refers Plaintiff to the chart that it attached to its Motion to Dismiss (ECF No. 16-5), which identified certain portions of Plaintiff's book *My Friend Anna* (hereinafter, the "Book"), Plaintiff's Vanity Fair article "As an Added Bonus, She Paid for Everything: My Bright-Lights Misadventure with a Magician of Manhattan" (hereinafter, the "Vanity Fair Article"), and Plaintiff's testimony at the criminal trial of Anna Sorokin, which support Defendant's opinion and substantial truth defenses.  Persons or entities who may have additional knowledge to support these defenses include Plaintiff, Anna Sorokin, Kacy Duke, Neffatari Davis, Todd Spodek, and Vanity Fair.  Additional support for these defenses can be found in Jessica Pressler and Shondaland's newsgathering materials, which will be produced in discovery subject to the aforementioned objections and to the extent that they are responsive and within Netflix's possession, custody, or control.

**INTERROGATORY NO. 3:**

State all facts, identify all documents, and identify all persons who have knowledge of facts which support or refute your contention that none of the Defamatory Statements is capable of a defamatory meaning.

**ANSWER TO INTERROGATORY NO. 3:**

Netflix objects to this Interrogatory on the basis that it calls for a legal conclusion and is otherwise overbroad and vague.  Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege.  Netflix also objects to this Interrogatory as premature, as additional responsive information and documents may be revealed throughout the course of discovery.

Notwithstanding these objections, Netflix refers Plaintiff to the chart that it attached to its Motion to Dismiss (ECF No. 16-5), which described further context from the episodes in the Series that support Defendant's defense of lack of defamatory meaning.

**INTERROGATORY NO. 4:**

State all facts, identify all documents, and identify all persons who have knowledge of facts which support or refute your contention you did not act with actual malice as alleged in the Complaint.

8

**ANSWER TO INTERROGATORY NO. 4:**

Netflix objects to this Interrogatory to the extent that it calls for a legal conclusion and is otherwise overbroad and vague.  Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege.  Netflix further objects to this Interrogatory to the extent that it seeks information beyond Netflix's possession, custody, or control—or information that Plaintiff already possesses.  Netflix also objects to this Interrogatory as premature, as additional responsive information and documents may be revealed throughout the course of discovery.

Notwithstanding these objections, Netflix responds as follows:  Netflix hereby incorporates its response to Interrogatory No. 2 regarding evidence of substantial truth.  Additional support for this defense can be found in Netflix's receipt of certain newsgathering materials developed by Jessica Pressler and Shondaland that demonstrate the substantial truth of the allegedly Defamatory Statements.  These materials will be produced in discovery subject to the aforementioned objections and to the extent that they are responsive.

**INTERROGATORY NO. 5:**

Identify all Gifts that Sorokin gave to Plaintiff at any time.

**ANSWER TO INTERROGATORY NO. 5:**

Netflix objects to this Interrogatory on the basis that it seeks information squarely within Plaintiff's knowledge and possession. Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege. Netflix further objects to this Interrogatory to the extent that it seeks information beyond Netflix's possession, custody, or control. Netflix also objects to this Interrogatory insofar as it attempts to shift the burden of proof to Netflix to prove substantial truth, when the law requires Plaintiff to prove falsity. Finally, Netflix objects to this Interrogatory as premature, as additional responsive information and documents may be revealed throughout the course of discovery.

Notwithstanding these objections, Netflix refers Plaintiff to the chart that it attached to its Motion to Dismiss (ECF No. 16-5), which identified certain portions of the Book, the Vanity Fair Article, and Plaintiff's testimony at the criminal trial of Anna Sorokin, which describe gifts that Plaintiff claims Sorokin gave to Plaintiff. Netflix also refers Plaintiff to her own Complaint (ECF No. 1) filed in this case, which similarly lists such gifts.

**INTERROGATORY NO. 6:**

Identify all Benefits for which Plaintiff paid, and which were consumed by, provided to or otherwise benefitted both Plaintiff and Sorokin (or Sorokin's friends).

**ANSWER TO INTERROGATORY NO. 6:**

Netflix objects to this Interrogatory on the basis that it seeks information squarely within Plaintiff's knowledge and possession. Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege. Netflix further objects to this Interrogatory to the extent that it seeks information beyond Netflix's possession, custody, or control. Netflix also objects to this Interrogatory insofar as it attempts to shift the burden of proof to Netflix to prove substantial truth, when the law requires Plaintiff to prove falsity. Finally, Netflix objects to this Interrogatory as premature, as additional responsive information and documents may be revealed throughout the course of discovery.

Notwithstanding these objections, Netflix refers Plaintiff to the Book, the Vanity Fair Article, and Plaintiff's testimony at the criminal trial of Anna Sorokin, in which Plaintiff alleges that she paid for certain items and experiences, which were consumed by, provided to or otherwise benefitted both Plaintiff and Sorokin (or Sorokin's friends). Some of these "benefits," such as expenses Plaintiff claims she paid for in Morocco, Plaintiff also admits that she only paid for on the assumption that Sorokin would repay her. And, in fact, Plaintiff also claims she never had to actually pay for the majority of the Morocco-related expenses because she used American Express cards to pay for these expenses and, following Sorokin's criminal

11

trial, American Express waived these charges.  *See* ECF No. 16-1 at 272; *see also* ECF No. 16-5 at 20-21.

**INTERROGATORY NO. 7:**

Identify all persons you may call as witnesses at trial (except expert witnesses) and as to each such witness identify and describe the subject matter on which that person may testify and the substance and the facts on which that person may testify.

**ANSWER TO INTERROGATORY NO. 7:**

Netflix objects to this Interrogatory as premature and inconsistent with the Federal Rules of Civil Procedure.  Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege.

Notwithstanding these objections, Netflix will respond to this Interrogatory via pre-trial disclosures "at least 30 days before trial," in compliance with Federal Rule of Civil Procedure 26(a)(3)(B).

**INTERROGATORY NO. 8:**

Identify each person who has been interviewed by you, or by any other person acting on your behalf, with regard to the facts alleged in the Complaint, and as to each such person state:

a.      the date of the interview;

12

b.      the name and last known address of the person who conducted the interview;

c.      whether or not the interview was written, recorded or summarized; and

d.      the name and address of each person who has a copy of any said writing, recording, or summary.

**ANSWER TO INTERROGATORY NO. 8:**

Netflix objects to this Interrogatory on the grounds that it is vague and indecipherable regarding the phrases "interviewed" and "with regard to the facts alleged in the Complaint"—especially insofar as it does not explain whether it is seeking information about the lawsuit itself or about the underlying facts involving Plaintiff and Sorokin.  Netflix further objects to this Interrogatory to the extent it purports to seek information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or reporter's privilege.  Netflix also objects to the extent that Plaintiff is seeking information outside of its possession, custody, or control.

Netflix cannot respond further because it does not understand what the Interrogatory seeks.

**INTERROGATORY NO. 9[2]:**

Identify each of the Filmmakers.

**ANSWER TO INTERROGATORY NO. 9:**

Netflix objects to this Interrogatory on the basis that "Filmmakers" is a term that Plaintiff—not Netflix—defined and thus Plaintiff is better situated to identify everyone who would fall under the term's definition. As stated in the General Objections, Netflix also objects to Plaintiff's definition of the term "Filmmakers" as vague with respect to its use of words such as "developed," "produced," "development," or "production;" and as overbroad with respect to its definition of actors who appeared in the Series as including the actors' agents, managers, and lawyers. Netflix also objects to the Interrogatory to the extent that it seeks information that is publicly available. Netflix objects to this Interrogatory as seeking irrelevant information that is not reasonably calculated to lead to discoverable evidence, and is thus disproportional to the needs of the case. Finally, Netflix objects to the extent that Plaintiff is seeking information outside of its possession, custody, or control—especially insofar as the term "Filmmaker" is defined to include "officers or employees of [third-party] Shondaland . . . who had responsibility for the development, production or post-production of the Series."

---

[2] Plaintiff titled this Interrogatory as Interrogatory No. 93. Netflix presumes that she meant Interrogatory No. 9, and so has re-titled it as such here.

Notwithstanding these objections, Netflix responds as follows:

1.      The writers of the relevant episodes in the Series that portray the character of "Rachel Williams" are listed in response to Interrogatory No. 1 *supra*.

2.      The directors, producers, editors, and actors in the Series are listed in the credits to each episode, which was provided to Plaintiff and the Court as Exhibit 4 to Netflix's Motion to Dismiss (ECF No. 16-4) and is also being separately produced as lists of final credits.

Dated: September 28, 2023

BARNES & THORNBURG LLP

*/s/  Thomas E. Hanson, Jr.*
Thomas E. Hanson, Jr. (No. 4102)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801-1050
Tel: 302-300-3474
Fax: 302-300-3456
Email:  Thanson@btlaw.com

DAVIS WRIGHT TREMAINE LLP
Rachel F. Strom (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
Lindsey B. Cherner (*pro hac vice*)
1251 Sixth Avenue, 21st Floor
New York, New York 10020
Tel: 212-402-4069
rachelstrom@dwt.com
chelseakelly@dwt.com
lindseycherner@dwt.com

*Attorneys for Defendant Netflix, Inc.*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby affirm that a copy of this document was served on Plaintiff's counsel via email on September 28, 2023, at the following addresses:

FARNAN LLP
Brian E. Farnan
Michael J. Farnan
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

RUFUS-ISAACS, ACLAND & GRANTHAM LLP
Alexander Rufus-Isaacs
aisaacs@rufuslaw.com

Rodney Smolla
rodsmolla@gmail.com

*/s/ Rachel F. Strom*
Rachel F. Strom