# **EXHIBIT 2**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS, | : |
| Plaintiff, | : |
| v. | : C.A. No.: 1:22-cv-01132-CFC |
| NETFLIX, INC., | : |
| Defendant. | : |

### DECLARATION OF SIMRON GILL

I, Simron Gill, hereby declare pursuant to 28 U.S.C. 1746 and under penalty of perjury that the following is true and correct:

1. I have been a lawyer working in-house at Netflix, Inc. ("Netflix") since March 2019, in the Intellectual Property department. My current title is Principal Counsel. I live and work in Los Angeles, California, where Netflix's headquarters are located. I make this declaration based on my personal knowledge in opposition to Plaintiff Rachel Deloache Williams' discovery letter-motion seeking to compel production of privileged communications, identified on Exhibits 1-3 of Plaintiff's letter. If called as a witness, I could and would testify competently thereto.

2. Netflix offers a subscription-based on-demand streaming service, distributing TV shows and movies to its members around the world. Netflix obtains the content it distributes in many different ways. Sometimes, Netflix obtains fully-finished, previously-released films and series that are made by other studios. Sometimes, Netflix acquires finished films from film festivals and distributes them as first-run films on our service. And sometimes Netflix (or a Netflix affiliate) works with creators or production partners to develop original television series or films, which we finance and distribute (whether as owned or licensed content).

3. In my role as in-house counsel at Netflix, I was responsible for providing legal advice for *Inventing Anna*, an original, Netflix-owned series, which Netflix released on its service on February 11, 2022 (the "Series"). Through her company, Shondaland, Inc. ("Shondaland"), television creator Shonda Rhimes was responsible for creating, researching, writing, and producing the Series, which Netflix distributed.

4. Because the Series was based on real events and people, Shondaland and Ms. Rhimes agreed to cooperate closely with Netflix and to provide Netflix with information Netflix reasonably requested to assess and evaluate the risks involved in the distribution of the Series. Netflix and Shondaland also agreed to cooperate in the joint defense of potential claims or legal actions arising from the Series. Finally, Netflix, Ms. Rhimes and Shondaland agreed to keep all information related to the Series confidential—in particular in the pre-release stage for the Series where secrecy is most important.

5. It was my responsibility to conduct the risk assessment (also known as the pre-publication legal review) for the Series for Netflix (and, by extension, to Shondaland). The purpose of a pre-publication legal review is to advise on legal risks in anticipation of potential litigation—such as the risk of defamation, privacy, copyright, or related claims—before releasing new content on the Netflix service. I was primarily responsible for the pre-publication legal review process, but several other Netflix in-house counsel also assisted, including colleagues in the Intellectual Property group, including the former head of the IP department, Jeremy Kaufman, and my colleagues Collin Peng-Sue and David Morisaki. We also worked with other Netflix in-house counsel. Those lawyers included lawyers in Netflix's Litigation group (Linda Burrow), and Netflix's Business and Legal Affairs department (Diana Bernstein, Alexis Tucker, and Jennifer

Silver). I refer to these Netflix lawyers throughout this Declaration collectively, with me, as "Netflix Legal."

6. On January 7, 2020, Netflix received a claim letter from an attorney representing Plaintiff named Glen L. Kulik. A true and correct copy of this letter is annexed hereto as Exhibit A. The claim letter "put on notice Netflix, Ms. [Shonda] Rhimes, . . . and all other persons and entities affiliated with the Series, that if Williams is portrayed in the show in a false light and/or in a defamatory manner, or if any portion of the Series infringes on her literary rights in the Article or Book, all responsible parties will be held accountable." *Id.* at 2. The letter went on to threaten legal action and expressly reserved all rights. *See id.*

7. On February 9, 2022, Netflix received a letter from Plaintiff's counsel in this litigation. A true and correct copy of this letter is annexed hereto as Exhibit B.

8. In light of these legal claim letters, and the parties' joint defense obligations, Netflix worked closely with Shondaland, Shondaland's production consultants, and other individuals who worked on the Series to conduct a thorough pre-publication legal review of the Series and to devise, in anticipation of litigation, a legal strategy to respond to Plaintiff's threatened legal claims.

9. Shondaland created the Series for Netflix. Shondaland performed the research, writing, development, and other creative work on the Series. Shondaland thus had all of the sourcing, background material, and research that went into the episode scripts. In order to conduct my legal review and risk assessment, I needed to communicate with Shondaland employees and other production consultants. Indeed, it would have been impossible to conduct a meaningful pre-publication legal review without Shondaland and its employees or contractors/consultants, all of whom were working on the Series. We understood and expected that Netflix Legal's communications with Shondaland, and those engaged by Shondaland or Netflix to work on the

3

Docusign Envelope ID: 7E5E5437-D4C5-44B7-A5BF-336CC6E3E73B

Series, would be kept confidential among those individuals who were working on the Series and essential to either (1) implementing Netflix's legal advice for the Series and/or (2) providing Netflix Legal with information so that Netflix in-house lawyers could appropriately apprise Netflix (and, by extension, Shondaland) of legal risks associated with the Series.

10. I have reviewed the exhibits to Plaintiff's discovery letter. I understand that the blue-highlighted entries in Exhibit 1 to Plaintiff's discovery letter all consist of communications between me (and/or another Netflix Legal lawyer) and someone working at Shondaland. All but two of these entries contain a communication with[1] Melissa Lo, a researcher hired by Shondaland to conduct the factual research for the Series. Communication with Ms. Lo was necessary to allow me and other Netflix Legal attorneys to understand the factual basis for the Series and to fully assess any potential legal risk the Series posed.

11. I understand that the green-highlighted entries on Plaintiff's Exhibit 1 refer to my communications with Joan Pearce Research Associates ("JPRA") and their director, Callista Card. JPRA is a private research services company that specializes in legal clearances and fact-checking for the entertainment and news industry. JPRA often provides movie studios and entertainment companies with Errors & Omissions reports for film and television scripts, production research, music clearances, and other background information on individuals who may be depicted in a film, series, or television show. JPRA was retained to assist me with reviewing and clearing the Series' episode scripts for legal risk, and Netflix obligated JPRA to maintain our correspondence in confidence.

---

[1] Only two of the blue-highlighted entries, PRIV000266 and PRIV000269, do not contain Ms. Lo as a sender or recipient—however, her name is mentioned in the correspondence, which is with Alison Eakle, the head of Fiction and Non-Fiction at Shondaland. Ms. Eakle was also essential to providing Netflix with confidential information required for the pre-publication review process.

Docusign Envelope ID: 7E5E5437-D4C5-44B7-A5BF-336CC6E3E73B

12. I understand that Plaintiff has challenged the red-highlighted entries in Exhibits 1 and 2 to her discovery letter because these communications included individuals not directly employed by Netflix, Shondaland, or JPRA. With one exception, these communications all reflect confidential legal communications with various individuals who were all production employees specifically hired to work on the Series.[2] Regardless of whether the contributors to the Series were Netflix, Shondaland, or other production employees—all were all under an obligation to keep information about the Series confidential. Netflix understood that Netflix Legal's communications with these individuals would be kept confidential. Indeed, most of these entries are to, from, or copied to Ashley Minyard, who was the Clearance Coordinator for the Series. In that capacity, Ms. Minyard supervised legal clearances for all production departments on the Series and reported directly to me and other Netflix Legal lawyers. My communications with Ms. Minyard, and those other production employees, were critical to understanding, assessing, and advising on legal risk related to the Series.

13. Plaintiff has challenged the magenta-highlighted entries on Exhibits 1-3 of Plaintiff's discovery letter because she believes that the communications are not *directly* to or from Netflix lawyers. Several have a Netflix in-house counsel on the "cc" line and constituted discussions involving Netflix lawyers to assess risk related to the Series, and two more were sent directly to Netflix lawyers included in the "IP Claims Reports" internal listserv. I understand that the remaining documents that Plaintiff has challenged in magenta-highlight consist of communications where Netflix or Shondaland employees or production-related workers discussed or forwarded advice that they had received from Netflix Legal relating to the Series, or stated that

---

[2] The one exception (PRIV000207) involved my communication with Phillip Thompson II of Trunk Archive, an image licensing agency. In preparing this declaration, Netflix determined it can redact the privileged portion of this email and produce the rest of the correspondence.

5

they were going to request specific advice from Netflix Legal. Where possible, I understand that our counsel produced such communications, and redacted only the portions that discussed, forwarded, or requested such legal advice.

14. I understand that Plaintiff also challenges the yellow-highlighted entries on Exhibits 1-2 to Plaintiff's discovery letter on the grounds that they allegedly provided insufficient information for Plaintiff to assess the privilege. I understand that these entries were not emails, but rather consist of work product and other documents collected from my custodial files (such as draft scripts, research, and/or other documents). They would not bear any sender or recipient information, because these are my work files that I kept while conducting my pre-publication legal review. These documents from my files contain my notes, legal advice, and/or were given to me for the purpose of providing my legal advice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 9, 2024 in Los Angeles, California.

DocuSigned by:
Simron Gill
―――――――――――――――――
583B940828274EF...
Simron Gill

# **EXHIBIT A**

# KULIK GOTTESMAN SIEGEL & WARE LLP

Glen L. Kulik
Donald S. Gottesman
Leonard Siegel
Thomas M. Ware II
Gary Kessler
Mitchell S. Brachman
David A. Bernardoni
Justin A. Nash
Samantha Kim
Camila Bersani
Vivian X. Tran
Nicholas Meerson

Attorneys at Law
Comerica Bank Building
15303 Ventura Boulevard
Suite 1400
Sherman Oaks, California 91403
www.kgswlaw.com

Telephone (310) 557-9200
(818) 817-3600
Facsimile (310) 557-0224

Sender's e-mail address:
gkulik@kgswlaw.com

File No.: 5800-0001

January 7, 2020

<u>By Federal Express</u>

Mr. David Hyman
General Counsel
Netflix
100 Winchester Circle
Los Gatos, CA 95032

Re: *Inventing Anna*

Dear Mr. Hyman:

     We are sending this letter on behalf of Rachel DeLoache Williams ("Williams"), writer of the Vanity Fair article *My Bright-Lights Misadventure with a Magician of Manhattan* ("Article") and author of the subsequent book *My Friend Anna* ("Book"). Reference is made to the Netflix limited series that is in production currently entitled *Inventing Anna* ("Series). The Series is reportedly written and created by Shonda Rhimes ("Rhimes") with Betsy Beers listed as executive producer. From what we have read about the Series it appears that Williams will be portrayed as a prominent character although no one affiliated with the Series has ever sought to confirm information or facts with her relative to her character or her story.

     As Rhimes is aware – and we assume you are too – Williams sold her interest in the Article and Book to HBO, including her character and story rights as embodied therein. While the project was in development at HBO, Rhimes decided to tell the same story and contacted Williams to option her rights. Williams explained to Rhimes that the rights were already controlled by HBO and thus could not be sold to Netflix. Rhimes decided to do her show anyway using my client as a major character but without consulting with her or verifying any facts.

     Especially when using someone's name and likeness without her approval, Netflix should be interested in acting within the bounds of the law. Our immediate concern is the false and defamatory manner in which Williams is described in your October 31, 2019 release to the media in which Netflix described her as follows:

> Rachel is a natural born follower and her blind worship of Anna
> almost destroys her job, her credit and her life. But while her

January 7, 2020
Page 2

        relationship with Anna is her greatest regret, the woman she becomes because of Anna may be Anna's greatest creation.

    In today's society, exploitation of women comes in different forms. We are quite certain that falsely portraying Williams in this manner and subjecting her to the ridicule of her peers, her employers, her family, and her friends is a form of exploitation that should not be tolerated. Williams was a bright, educated, and successful woman before she met Anna Sorokin. She has never been, nor will she ever be, a creation of Ms. Sorokin. She was duped by Ms. Sorokin, as were a lot of intelligent people, although other characters were described in the media release in more positive terms than was Williams.

    We recognize that a press release is meant to titillate and may bear little relationship to the Series as it evolves and is ultimately produced and distributed. Therefore, our client will not rush to judgment or reach any conclusions until she sees the Series. But we put on notice Netflix, Ms. Rhimes, Ms. Beers, and all other persons and entities affiliated with the Series, that if Williams is portrayed in the show in a false light and/or in a defamatory manner, or if any portion of the Series infringes on her literary rights in the Article or Book, all responsible parties will be held accountable. Filing legal actions of that nature is what I do for a living but I sincerely hope that in this instance the producers and distributors of the Series be responsible and respectful of Williams' rights so that such an action will be unnecessary.

    All rights are expressly reserved and no waiver or estoppel shall be created by this letter. Nor should this letter be construed as a complete recitation of the facts or of Williams' potential claims. I invite you to call me should you further wish to discuss this letter.

    Thank you for your courtesy and cooperation.

                                    Very truly yours,

                                    Glen L. Kulik, Esq.
                                    of KULIK GOTTESMAN SIEGEL & WARE LLP


cc: Ms. Shonda Rhimes
    Ms. Betsy Beers
    Nina Wolarsky
    Ms. Rachel DeLoache Williams

# **EXHIBIT B**

**Rufus-Isaacs, Acland & Grantham LLP**

9420 Wilshire Blvd
Suite 8100
Beverly Hills, CA 90212
t:310.274.3803
www.rufuslaw.com

February 9, 2022

**VIA ELECTRONIC MAIL ONLY**

Jeremy Kaufman
Vice President, Intellectual Property
Netflix, Inc.
5808 Sunset Blvd.
Los Angeles, CA 90028
E-Mail: vanessav@netflix.com

Re:   Rachel Williams - *Inventing Anna*

Dear Mr. Kaufman:

We represent Ms. Williams. In a letter dated January 7, 2020, Ms. Williams' former lawyer, Glen Kulik, placed Netflix on notice about her concerns regarding her portrayal in the Netflix series, *Inventing Anna*. In particular, but without limitation, Mr. Kulik referenced the false and misleading description of Ms. Williams in a press release dated October 31, 2019, and emphasized that she was duped by Ms. Sorokin. In a letter dated January 17, 2020, you informed Mr. Kulik that Netflix had no intention to ridicule or exploit Ms. Williams and promised him that Netflix's portrayal of her "will be within the bounds of the law."

Despite Mr. Kulik's letter of warning, Ms. Williams has learned that the series, which is due to be released on February 11, 2022, includes several scenes that are grossly defamatory. In the most glaring example, the actress playing Ms. Williams is depicted in a scene with her employers at Vanity Fair who inform her that she will be suspended from her job because her actions amount to complicity in defrauding the company. The male executive tells her: "You helped your friend defraud this company. You're neck deep in this, Rachel." A link to this scene can be found at https://vimeo.com/675236011/cf63814783

We hereby demand that this scene be deleted in its entirety before the series is released. It constitutes an egregious fabrication which falsely informs viewers that Ms. Williams helped Ms. Sorokin defraud Vanity Fair, and that she was suspended from her job pending an investigation. The words, "You're neck deep in this, Rachel" convey the false message that rather than being an unwitting and innocent victim of Ms. Sorokin's

8667.1.1

RDW440004

Jeremy Kaufman
February 9, 2022
Page 2

fraudulent activities, which is the truth, Ms. Williams was a co-conspirator in those activities, and had therefore committed criminal acts.

In fact, Ms. Williams was wholly innocent, and was herself defrauded by Ms. Sorokin to the tune of $60,000; she played a significant part in bringing Ms. Sorokin to justice and assisted various law enforcement agencies in doing so; Vanity Fair was very supportive of Ms. Williams when Ms. Sorokin's activities came to light; it did not suspend her or mount a formal investigation of her activities; and she remained at her job for another two years until a round of job cuts in the normal course of business resulted in her leaving.

This letter is not intended to be a complete recitation of the facts and theories arising out of this matter. Once the series is released, it will be examined for further examples of defamatory and other tortious conduct. Ms. Williams reserves her right to rely on facts and theories in addition to those set forth above. Nothing herein is intended as a waiver of any of their legal and equitable rights and remedies, all of which are hereby reserved.

I look forward to your prompt response.

Very truly yours,

RUFUS-ISAACS ACLAND &
GRANTHAM LLP

*[signature]*

Alexander Rufus-Isaacs

ARI:ari

cc:     Client

8667.1.1

RDW440005