IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>NETFLIX, INC.,<br><br>　　　　　　　Defendant. | C.A. No. 22-cv-1132-CFC-EGT<br><br>**FILED UNDER SEAL** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPTEMBER 6, 2024 LETTER**

Dated: September 10, 2024

Alexander Rufus-Isaacs (admitted *pro hac vice*)
RUFUS-ISAACS ACLAND &
GRANTHAM LLP
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Phone: (310) 274-3803
aisaacs@rufuslaw.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Rodney Smolla (Bar No. 6327)
164 Chelsea Street
South Royalton, VT 05068
rodsmolla@gmail.com
(864) 373-3882

*Attorneys for Plaintiff Rachel DeLoache Williams*

Pursuant to this Court's Order (D.I. 83), Plaintiff Rachel Williams respectfully submits this letter brief in opposition to Netflix's motion to compel production of two categories of documents.

**Williams' Tax Returns and Income Records**.  Williams stated in her Rule 26(f) report that she is only seeking general damages.  To avoid any uncertainty, Williams confirms that she waives any claim against Netflix for damages relating to any past or future loss of income. Accordingly, the first category of documents should not be produced because they are irrelevant to the issues in this case and because Williams has confidentiality and privacy interests in those documents. The Third Circuit has held that because federal income tax returns are divulged to the government with "an expectation of confidentiality[,]" before permitting disclosure of such returns in civil litigation, courts should balance the return-holder's privacy interest with other factors, including the moving party's need for the information, its materiality and its relevance. *DeMasi v. Weiss*, 669 F.2d 114, 119-20 (3d Cir. 1982). As a result, before permitting discovery of a party's tax returns, courts in this Circuit have required a showing that (1) the tax returns are relevant and (2) the party seeking the returns has a compelling need for the returns, because the information is not otherwise readily obtainable. *Commonwealth Ins. Co. of Am. v. Colony N. Apartments*, 2013 WL 12506986, at *2 (D. Del. July 24, 2013). The same principle should apply to details of her income. Therefore the documents are irrelevant and should not be produced.

The second category consists of documents that Williams withheld from production based on claims on attorney-client privilege and attorney work product protection. They are identified in yellow on the privilege logs on pages 1 and 2 of Exhibit 6.[1]

**Attorney-Client Privilege.**  The attorney-client privilege protects "any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.' " *In re Teleglobe Commc'ns Corp*., 493 F.3d 345, 359 (3d Cir.2007). The client, the attorneys, and any of their agents that help facilitate attorney-client communications or legal representation are included within "privilege persons." Id.

Netflix's argument that Williams has waived the privilege by sharing attorney-client communicating with 4 trusted advisors has no merit because those communications fall under the agency exception. When, aged 29, she discovered that she had been conned by Anna Sorokin and later when she learned that Netflix intended to make a series falsely depicting her as a despicable person, Williams knew that she needed legal advice, but she was a photo editor at a magazine and had never dealt with lawyers or lawsuits before. [Ex. A, Rachel Williams Declaration, ¶¶3-4.]  So she turned to her parents, both of whom were psychologists, to her boyfriend James Zumot who was an experienced investment manager, and to her boss/mentor Kathryn Schafer,

---

[1] The documents identified on the other spreadsheets on Exhibit 6 were produced by non-party witnesses pursuant to subpoenas served on those witnesses in New York (Zumot and Schafer) and Tennessee (her parents). An application for order to compel discovery from a person who is not a party must be made in the district where the discovery is or will be taken. [FRCP 37(a)(2)]. Since these documents were not produced by Williams, this Court does not have jurisdiction to compel their production. However, there is substantial overlap between the various logs - many of the documents withheld by Plaintiff have also been withheld by the witnesses.

1

who was an award winning creative consultant, to facilitate the rendition of legal services that she required by helping improve her comprehension and wording of the communications between her attorneys (Kulik and Rufus-Isaacs) and herself and by seeking their advice about various matters that her attorneys raised. [Id., ¶¶4-8.] She believed that her communications with these four people were confidential, as was often expressly acknowledged, and she was certain that none of them would ever voluntarily assist her adversaries in this litigation. [Id., ¶9.]

In such circumstances, the attorney-client privilege is not waived. "[W]here a third party is present during attorney-client communications, as either the party's or the attorney's agent, in order to facilitate rendition of legal services, the protection of the privilege remains intact." *Oxyn Telecommunications, Inc. v. Onse Telecom*, 2003 WL 660848, at *2 (S.D.N.Y. Feb. 27, 2003) (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). In *Kovel*, the Second Circuit "recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). "The test dividing agency (and thus privilege protection) and lack thereof (and thus waiver) is the necessity of the third-party in facilitating the confidential communications between counsel and client." *Guiffre v. Maxwell*, 2016 WL 1756918, at *8 (S.D.N.Y. May 2, 2016).

At the same time, "the scope of the privilege is not defined by the third parties' employment or function ... it depends on whether the client had a reasonable expectation of confidentiality under the circumstances." *People v. Osorio*, 549 N.E.2d 1183 (1989). Accordingly, "to avail itself of the 'agency' exception and avoid the consequences of a waiver, case law makes clear that [the party claiming privilege] must establish" both a "reasonable expectation of confidentiality" and "that disclosure to a third party ... was necessary for the client to obtain informed legal advice." *National Education Training Group, Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) (internal quotation marks and citations omitted).

Courts have found no waiver of attorney-client privilege where various third parties, including both family and non-family, acted as the client's agent in communicating with counsel. See, e.g., *Oxyn Telecommunications*, 2003 WL 660848 at *3 (privilege preserved where business executive and attorney from third-party corporate entity helped "maximize the effectiveness of [the parties'] attorney-client communications" and whose presence was "intended and expected to enhance communications" across two different cultures); *Stroh v. General Motors Corp.*, 213 A.D.2d 267, 268 (1st Dep't 1995) (privilege preserved where daughter selected law firm for injured mother, drove her to the law office, and "put her sufficiently at ease to communicate effectively with counsel" about "what was probably the most traumatic experience of her life"); *St. Louis v. Hrustich*, 2012 WL 1958898, at *2 (Sup. Ct. Albany Cty. May 30, 2012) (privilege preserved where plaintiff's fiancé initially contacted attorney on plaintiff's behalf at a time when plaintiff was in great pain and could not care for herself, and later communicated with attorney alone or with plaintiff present on multiple occasions); *Bulgari v. Bulgari*, 649 F. Supp. 3d 8, 12 (S.D.N.Y. 2023) (extending privilege to communications where client relied on long-term romantic partner's ability to communicate financial knowledge relevant to case and client maintained reasonable expectation of confidentiality).

Lastly, Exhibit 7 to the Motion is a privileged attorney-client email that was produced inadvertently. Williams intends to invoke the claw back provisions of the ¶14.1 of the Stipulated Protective Order (D.I. 41) which provides in part that inadvertent production of privileged materials in this case shall not be deemed to constitute a waiver of any privilege or protection. [Ex. B, Declaration of Alexander Rufus-Isaacs, ¶4.]

**Work Product Protection.**  The work product doctrine is a privilege that is distinct from, and broader than, the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). The doctrine protects papers "prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991); accord *WebXchange Inc. v. Dell Inc.,* 264 F.R.D. 123, 128 (D. Del. 2010) (citation omitted); Fed. R. Civ. P. 26(b)(3) (defining work product as "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). The policy underlying the doctrine is that if attorneys can prepare their cases without fear that their work product will be used against their clients, this will promote the adversary system. *Westinghouse*, 951 F.2d at 1428. The party asserting the work product doctrine bears the burden of demonstrating that the documents at issue were prepared by or for counsel in preparation for trial or in anticipation of litigation. Plaintiff has met that burden. [Rufus-Isaacs Declaration, ¶5.]

 "Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. **Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information**. See, for example, AT & T, 642 F.2d at 1299. See also 8 Wright & Miller, § 2024 at 210 (citing cases). "**We agree that the purpose of the work-product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries**." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (emphasis added). In the present case, the communications in question all passed between Williams and the people closest to her in her life who were clearly non-adversaries, and therefore the work product protection has not been waived.

Moreover, attorney work product is not discoverable absent a showing of substantial need, undue hardship, or inability to obtain their equivalent by other means. Fed. R. Civ. P. 26(b)(3); *WebXchange Inc.*, 264 F.R.D. at 128. Even where such a showing is made, Rule 26(b)(3) requires courts to protect from disclosure "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *WebXchange Inc.*, 264 F.R.D. at 128. Despite the clear assertion of work product protection in the privilege log, Netflix ignored that issue and made no such showing of substantial need or undue hardship, and the protection of Plaintiff's counsel's opinions etc. should take precedence.

For all of these reasons, Plaintiff respectfully requests that the Court denies Netflix's motion.

                                        Respectfully submitted,

                                        /s/ Brian E. Farnan

                                        Brian E. Farnan

cc: Counsel of Record (Via E-Mail)