

October 17, 2024

**VIA E-FILING**
The Honorable Eleanor G. Tennyson
J. Caleb Boggs Federal Building
844 N. King Street
Unit 38, Room 4104
Wilmington, DE 19801-3555

Re: <u>*Williams v Netflix, Inc.*, C.A. No. 22-cv-1132-CFC-EGT</u>

Dear Judge Tennyson:

This constitutes Plaintiff's brief on the issues which remain in dispute pursuant to the Joint Status Report dated September 2024 (D.I. 100) ("<u>JSR</u>"), and the Court's approval of parties' proposals therein by Oral Order entered September 23 (D.I. 101).

Since the last hearing, the parties have met and conferred and resolved several issues. They have agreed on the extent to which Plaintiff may redact her emails with her parents etc. They have agreed in principle on a resolution of the dispute over the reporter's shield protection and hope that that issue can be fully resolved informally. They have resolved the dispute over the production of Netflix-Shondaland documents. And Plaintiff has agreed not to seek production of any documents sent or created either by Netflix's inhouse counsel or by sent by Ashley Minyard, a clearance coordinator hired by Netflix (absent waiver issues). The remaining issues in dispute involve the attorney client privilege, the work product doctrine and the joint defense doctrine. Netflix's original Privilege Log of withheld documents listed 331 documents. Since the last hearing, Netflix served a 2nd Amended Privilege Log which has new information in red text concerning the documents from the files of Netflix's inhouse counsel, Simron Gill. Plaintiff added highlighting to show the applicable category - see Exhibit 1: (1) blue-highlighted communications between Netflix lawyers and Shondaland, and documents created by Shondaland; (2) green-highlighted communications between Netflix lawyers and The Joan Pearce Research Agency ("<u>JPRA</u>"), and documents created by JPRA; (3) ochre-highlighted documents passing between Netflix lawyers and third parties who are not employed by Netflix, Shondaland or JPRA; (4) lavender-highlighted documents passing between Netflix personnel who are not lawyers and/or Shondaland employees or third parties; and (5) four yellow-highlighted documents for which Netflix has still provided insufficient information.[1]

**1.   <u>General Principles</u>**

(a)   <u>Governing Law</u>. The law of the state where the individuals in question are located (in this case, they are mostly in California) governs the attorney client privilege and related issues such as the joint defense doctrine, and federal law governs the work product doctrine.

(b) <u>Privilege Should Be Narrowly Construed In Actual Malice Cases</u>. Under California law, the attorney-client privilege should be narrowly construed because it prevents the admission of relevant and otherwise admissible evidence. [*Behunin v. Superior Ct.*, 9 Cal.App.5th 833, 850 (2017).] Plaintiff suspects that many of the disputed documents show Netflix's knowledge about the events upon which the Series is based, and are therefore of great importance to the actual malice issue. As the First Circuit held in *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 26 (1st Cir. 2011), "[t]he doctrine construing the attorney-client privilege narrowly … strikes us as

---

[1] Plaintiff does not seek to compel production of documents that are not highlighted.

particularly applicable in defamation cases, such as this one, involving public figures. Cf. *Lando*, 441 U.S. at 175–76, 99 S.Ct. 1635; *Bruno & Stillman*, 633 F.2d at 594–97. Actual malice must be proven with 'convincing clarity,' *N.Y. Times*, 376 U.S. at 285–86, 84 S.Ct. 710... Mindful of this hefty burden, upholding the district court's decision on this record to withhold the sought documents which seemingly bear directly on state of mind would be incompatible with the 'search for truth.' *Nixon*, 418 U.S. at 710, 94 S.Ct. 3090."

(c) <u>Burden</u>. The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [*Costco Wholesale Corp. v. Superior Ct.,* (2009) 47 Cal. 4th 725, 733.]

(d) <u>Waiver</u>. The privilege may be waived "with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." Cal. Evid. Code § 912 (a).

(e) <u>Statute</u>. In California, the attorney-client privilege is governed by statute. Cal. Evid. Code ("Ev. Code") § 950 et seq. There are no exceptions "unless expressly provided by statute." [*Chubb & Son v. Sup.Ct. (Lemmon)* (2014) 228 Cal.App.4th 1094, 1103-1104.]

**2. Blue-Highlighted Category: Communications Between Netflix Lawyers And Shondaland, And Documents Created By Shondaland**

(a)     The Attorney-Client Privilege.

Ev. Code § 952. On Page 1 of its original letter brief in opposition to this motion ("<u>Letter Brief</u>"), Netflix claimed that this category falls within the attorney-client privilege, citing Ev. Code § 952 which provides that "[a]s used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted..." But rather than expanding the scope of the attorney-client relationship as Netflix suggests, § 952 explains how an attorney-client communication can be forwarded to a third party without losing the protection of the privilege.

Many of the communications in this category are emails from Shondaland's Michelle Lo to Ms. Gill, both of whom are located in Los Angeles. As inhouse counsel employed by Netflix, Ms. Gill's client is Netflix and the attorney-client privilege generally protects her confidential communications with other Netflix employees, but not with anyone else. [*Upjohn Co. v. United States* (1981) 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584) held that "the corporate attorney-client privilege extends not only to communications between corporate counsel and members of the control group, but also to communications with middle and low level corporate employees." *Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 114.]

Because Ms. Lo is not a Netflix employee, she is not Ms. Gill's client, and because § 952 provides that the attorney-client privilege only applies to "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence," § 952 does not provide any support for Netflix's assertion that these emails are covered by the privilege. Its function is to set out the circumstances in which an attorney-client communication can be forwarded to a third party without losing the protection of the privilege. If, for example, Ms. Gill had sent an email to a Netflix colleague about a confidential matter, and then forwarded that attorney-client communication to Ms. Lo, that would constitute a disclosure to a third party but it would not result in a waiver of the privilege if the other conditions of § 952 were met.

Netflix Cannot Meet Its Burden Of Showing Agency. The attorney-client privilege may cover third parties acting as agents of the client or of the attorney who assist in providing legal advice, such as accountants. [*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 639.] However, the party claiming the existence of agency has the burden to prove the existence and scope of the agency with actual facts. [*Zimmerman v. Superior Ct.*, (2013) 220 Cal. App. 4th 389, 403.] Under California law, "whether an agency relationship has been created or exists is determined by the relation of the parties as they in fact exist by agreement or acts [citation], and the primary right of control is particularly persuasive. [Citations.] Other factors may be considered to determine if an independent contractor is acting as an agent, including: whether the 'principal' and 'agent' are engaged in distinct occupations; the skill required to perform the 'agent's' work; whether the 'principal' or 'agent' supplies the workplace and tools; the length of time for completion; whether the work is part of the 'principal' regular business; and whether the parties intended to create an agent/principal relationship. [Citation.]" (Cite omitted.)" [*Secci v. United Independant Taxi Drivers, Inc*., 8 Cal. App. 5th 846, 855 (2017).] Netflix has not met its burden. Just because Shondaland produced the Series under a contract with Netflix and was obliged to provide information to Netflix does not by itself create an agency relationship because it does not show the crucial element of control. (Gill Decl., ¶¶3-10). A contractual obligation to cooperate is not enough, and the contracts in question are silent on the agency issue. Moreover, Netflix's counsel appears to have denied that an agency relationship existed. Plaintiff's counsel wrote a letter to Netflix's counsel dated February 16, 2024, about Netflix's Responses to Plaintiff's Requests to Produce Documents, stating "[c]ourts have held consistently that documents in possession of the responding party's agent are within the party's control (cite omitted).. Netflix is obliged to produce all responsive documents that are within the control of its agents, a category which appears to include Shondaland with respect to the making of the Series." (Exh. 2, p. 3.) Netflix's counsel replied on February 26, 2024, denying that an agency relationship existed: "Contrary to the assertions in your letter, we are not Shondaland's agent[2] (and emails from the various third parties you have identified are not in Netflix's control) and cannot produce documents on behalf of a separate third-party." (Exh. 3, p. 1.)

(b)    Common Interest Or Joint Defense Doctrine. Netflix also argues that communications from Shondaland to Netflix are protected from disclosure by the common interest or joint defense doctrine, and cited several cases which applied the doctrine to prevent disclosure of information or documents that were shared between production companies and/or authors of source material and/or film makers where these persons were concerned about being sued for libel. But none of these cases is under California law. [*Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1098 (S.D.N.Y. 1984), *Berisha v. Lawson*, 973 F.3d 1304, 1317–18 (11th Cir. 2020), Tyne v. Time Warner Entm't Co., 212 F.R.D. 596, 600–01 (M.D. Fla. 2002).]

Doctrine Only Protects Otherwise Privileged Communications. One of the 3 requirements for the joint defence doctrine to apply is if "the communicated information would otherwise be protected from disclosure by a claim of privilege." *OXY Resources California LLC v. Superior Court*, 115 Cal.App.4th 874, 890 (2004).[3] Thus, an email from a Netflix lawyer to a Netflix

---

[2] The February 16th letter asserted that Netflix was entitled to obtain documents from Shondaland because it was Netflix's agent. Since Netflix's counsel was denying that assertion, her intent in this sentence must have been to deny that Shondaland was Netflix's agent, not vice versa.

[3] "Therefore, a party seeking to rely on the common interest doctrine does not satisfy its burden to justify a claim of privilege simply by demonstrating that a confidential communication took

colleague falls within the attorney-client privilege and under the joint defence doctrine, this protection would not be waived if the email were forwarded to someone at Shondaland. On the other hand, the doctrine does <u>not</u> protect an email sent by someone at Shondaland (e.g., Ms. Lo) to a Netflix lawyer (e.g., Ms. Gill) because they do not have an attorney-client relationship. <u>Doctrine Only Applies To Co-Defendants</u>. The doctrine only "protects prelitigation communications between codefendants on matters at issue in subsequent litigation." [*Getz v. Superior Ct.,* 72 Cal. App. 5th 637, 656, 287 Cal. Rptr. 3d 722, 736 (2021).] Prior to receiving a letter from Plaintiff's former counsel Glen Kulik in January 2020, there is no evidence that a threat of litigation was perceived. And once the one-year statute of limitations passed in February 2023, Shondaland was no longer a potential defendant. Thus, the doctrine does not cover communications with Shondaland before January 2020 or after February 2023.

(c)     <u>The Attorney Work Product Doctrine</u>. Most of the documents in Ms. Gill's file which are not communications came from Shondaland's Ms. Lo who presumably created them. (Gill Decl., ¶10). The fact that some of them may have been sent to Netflix under cover of a privileged email does not render them privileged. *In re Hum. Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008), appeal denied, judgment aff'd, No. CIV. 06-135, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) ("merely attaching something to a privileged document does not, by itself, make the attachment privileged"; *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119 (Documents that are independently prepared by a party "do not become privileged communications ... merely because they are turned over to counsel"; *In re Gabapentin Pat. Litig.,* 214 F.R.D. 178, 187 (D.N.J. 2003) (stapling one privileged document to a non-privileged document does not cloak the non-privileged material with protection from discovery).

**3.     <u>Green-Highlighted Category: Communications Between Netflix Lawyers And JPRA, And Documents Created By JPRA</u>**

Ms. Gill describes JPRA as "a private research services company that specializes in legal clearances and fact-checking for the entertainment and news industry (which) often provides movie studios and entertainment companies with Errors & Omissions reports for film and television scripts, production research, music clearances, and other background information on individuals who may be depicted in a film, series, or television show. JPRA was retained to assist me with reviewing and clearing the Series' episode scripts for legal risk." (Gill Decl., ¶11.) In *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6 (1st Cir. 2011), plaintiff sued documentary filmmakers for libel and moved to compel discovery of a report which had been prepared by a third party fact checking service identical to JPRA called Bardsley at the request of the filmmakers' counsel, Fred Leopold. The district court denied discovery of the Bardsley materials but the 1st Circuit reversed: "The filmmakers try to fit the Bardsley documents into the *Kovel* mold. They argue that Bardsley was "necessary, or at least highly useful" because Leopold required her report in order to analyze and assess the legal risks associated with the film. That may be true (though a point we do not resolve here), but it is not sufficient. <u>The key, it seems to</u>

---

place between parties who purportedly share a common interest. Rather, <u>the party seeking to invoke the doctrine must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege</u>. For example, the content of the communication may comprise information shared in confidence by a client with his or her attorney, a legal opinion formed and advice given by the lawyer in the course of the attorney-client relationship, or a writing reflecting an attorney's impressions, conclusions, or theories. (See Evid. Code, § 952; Code Civ. Proc., § 2018, subd. (c).)" (Emphasis added).

us, involves considering the source and nature of the information contained in the documents. If the communication contains only client confidences made in pursuit of legal advice—or legal advice based on such client confidences—that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one. If, however, the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged." (Emphasis added). And as explained in *Upjohn*, "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. U.S.*, 449 U.S. at 395. Under this limitation, all documents or communications prepared by JPRA consisting largely of facts acquired from non-client sources are discoverable. Though *Lluberes* is an out of state case, it is consistent with California law. For example, the attorney-client privilege "does not protect disclosure of underlying facts which may be referenced within a qualifying communication." [*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625. 639.] " 'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney.... While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.' " [*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 397.] "[T]ransmission alone, even where the parties intend the matter to be confidential, cannot create the privilege if none, in fact, exists." [*Suezaki v. Superior Court* (1962) 58 Cal.2d 166, 176.] Documents that are independently prepared by a party "do not become privileged communications ... merely because they are turned over to counsel." [*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119.]

4.      **Ochre-Highlighted Category: Communications Passing Between Netflix Lawyers And Third Parties Who Are Not Employed By Netflix, Shondaland Or JPRA**

The attorney client privilege only protects communications between lawyers and their clients. The documents in this category are communications from persons who are not employed by Netflix, Shondaland or JPRA to Netflix lawyers. The fact that these people may have worked on the Series is not in itself sufficient reason to bring these communications within the privilege. For example, based on public records, Adi Slepak (the sender of PRIV164 et al.) was a graphic designer. And Paola Limon (the sender of PRIV176 et al.) was a script coordinator. And most of these emails were copied to several other individuals who were not Netflix employees. Netflix bears the burden of showing that these communications fall within the attorney client privilege and that their confidentiality was not waived by being copied to the others.

5.      **Lavender-Highlighted Category: Communications Passing Between Netflix Non-Lawyers And Shondaland Employees Or Third Parties**

The communications highlighted in lavender are between non-lawyers and many of them were copied to large numbers of other people, e.g., PRIV162. Netflix bears the burden of showing that these communications fall within the attorney client privilege and that their confidentiality was not waived by being copied to the others. The fact that some of the people on the c.c. line were Netflix attorneys does not make these communications privileged. "Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney.... While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.' " [*Greyhound Corp. v. Superior Court*, supra.]

6.      **Redacted Documents**. Attached as Exhibits 4 and 5 are Netflix's privilege logs for redacted documents. Plaintiff only seeks production of those items which are highlighted.

        Respectfully submitted,

        /s/ Brian E. Farnan

        Brian E. Farnan

cc: Counsel of Record (Via E-Filing)