IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RACHEL DELOACHE WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-1132-CFC-EGT ) |
| NETFLIX, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington, this 21st day of November 2024:

Presently before the Court is Plaintiff Rachel DeLoache Williams's ("Plaintiff" or "Ms. Williams") request for an order compelling Defendant Netflix, Inc. ("Defendant" or "Netflix") to produce various documents exchanged between Netflix attorneys and certain third parties – documents that Defendant has withheld or redacted on the basis of attorney-client privilege or work product. (D.I. 81). The Court has received several rounds of letter briefing and related submissions (D.I. 88, 93, 113, 114, 131, 134, 141, 148 & 149), heard oral argument (D.I. 154 & 155) and conducted a limited *in camera* review (D.I. 141). For the reasons set forth below, Plaintiff's request is DENIED.

**I.     BACKGROUND**

Plaintiff has sued Defendant for defamation based on the portrayal of Plaintiff in the Netflix series *Inventing Anna*, which was released in February 2022.[1] (*See generally* D.I. 1). The series was created and produced by another company, Shondaland, Inc. ("Shondaland"), but several

---

[1] Plaintiff also asserted a claim of false light invasion of privacy against Defendant (D.I. 1 ¶¶ 137-42). This action is based in diversity, and New York law applies to Plaintiff's substantive claims. On March 26, 2024, Chief Judge Connolly dismissed the false light claim as not recognized under New York law. (*See* D.I. 65 at 1-2).

years of research and collaboration between Netflix, Shondaland and Joan Pearce Research Associates ("JPRA") occurred prior to the release of the series on Netflix's streaming platform. (*See, e.g.*, D.I. 93, Ex. 2 ¶¶ 3-5, 9 & 11 (declaration from Netflix in-house counsel, Simron Gill)). At various stages throughout the production process, Netflix attorneys sought input from individuals at these companies (and others) to understand the content and potential legal exposure from the *Inventing Anna* series. (*Id.* ¶¶ 4, 5, 9, 10 & 11). Those same individuals would also reach out to Netflix attorneys to seek legal clearance regarding production decisions. (*Id.* ¶¶ 9, 12 & 13). All individuals that worked with Netflix on the series were obligated to keep information and requests for information related to the series confidential. (*Id.* ¶ 4 (Shondaland), ¶ 11 (JPRA), ¶ 12 (other production employees)).

In late August 2024, the parties raised eight discovery disputes with the Court, one of which related to Defendant's assertion of privilege and work-product protection over communications with Shondaland, JPRA and other individuals who performed work on the series. (D.I. 81; *see also* D.I. 88 at 1-2). At the time of the Court's teleconference on September 13, 2024, Plaintiff was challenging Defendant's claim of privilege and work-product protection as it related to roughly 270 documents. Because it was apparent that the parties had not discussed Plaintiff's challenges on a document-by-document basis or in any amount of meaningful detail, the Court ordered the parties to meet and confer again to reduce and streamline the remaining privilege disputes. (D.I. 154 at 65:8-66:15). After receiving further letter briefing (D.I. 113, 114, 117, 131 & 134), Defendant was ordered to supplement its privilege logs to enable the Court to assess the claims of privilege and Plaintiff's claims of waiver (D.I. 155 at 35:19-23 & 43:10-13). Defendant also provided the Court with a supplemental declaration from Netflix regarding the nature of the

2

various third-party relationships and confidentiality obligations, as well as a limited production of documents for *in camera* review. (*See* D.I. 141; *see also* D.I. 155 at 39:16-40:8 & 41:6-25).

Despite the many rounds of meeting and conferring and significant supplementation by Defendant, the present privilege dispute seems largely unchanged from when it was first raised. What remains before the Court is Plaintiff's continued challenge to about 150 withheld documents and 30 redacted documents that were exchanged among Netflix attorneys or between Netflix attorneys and third-party individuals working on the series.[2]

## II.   LEGAL STANDARDS

### A.   Attorney-Client Privilege

"Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship."[3]  *Chang v. Cashman*, No. 22-02010-AMO (DMR), 2024 WL 3250833, at *2 (N.D. Cal. July 1, 2024); *see also People v. Miles*, 464 P.3d 611, 668 (Cal. 2020).  In California, a confidential communication is defined as:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted,

---

[2]   Plaintiff has purportedly reviewed the supplemental logs, supplemental declaration and slipsheets accompanying the *in camera* production (*see* D.I. 146) but has only withdrawn a handful of challenges (D.I. 148).  Having reviewed that additional information provided by Defendant, the Court finds it a little incredible that Plaintiff has not withdrawn more.

[3]   Because this action is based in diversity, state privilege law applies. FED. R. EVID. 501. The communications at issue were sent from or to individuals located in California or New York, with most located in California.  The parties agree that California privilege law applies. (D.I. 155 at 4:1-12).  There is thus no need to engage in a choice-of-law analysis.

3

>and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

CAL. EVID. CODE § 952. Such privileged communications are generally shielded from discovery. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Super. Ct.*, 219 P.3d 736, 741 (Cal. 2009). Once a party has made this *prima facie* showing, the burden shifts to the opponent to demonstrate that the communication was not confidential or that the privilege does not otherwise apply. *Id.*

Although voluntary disclosure of confidential communications to a third party ordinarily destroys a claim of privilege, the California statute explicitly provides that there is no waiver "when [such] disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted." CAL. EVID. CODE § 912(d); *see also id.* § 952 (including as confidential communications those to third persons "to whom disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted"). The exceptions to the disclosure-waiver principle found in California Evidence Code §§ 912 and 952 fall into two categories: (1) where the third party has no interest of their own in the legal matter but is nevertheless "an agent or assistant who will help to advance the litigant's interest" and (2) where the third party is not an agent but has their own interest to advance in the matter that aligns in "some way" with the litigant.[4] *Citizens for Ceres v. Super. Ct.*, 159 Cal. Rptr. 3d 789, 806-07

---

[4] This second category is known as the common-interest doctrine. *See Citizens for Ceres*, 159 Cal. Rptr. at 806-07. Although often referred to as such, the common-interest doctrine is not a standalone privilege. Rather, the doctrine operates to prevent waiver in situations where a privileged communication is shared beyond the attorney-client relationship. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other.").

4

(Cal. Ct. App. 2013); *see also Behunin v. Super. Ct.*, 215 Cal. Rptr. 3d 475, 485 (Cal. Ct. App. 2017). The party asserting the privilege bears the burden to show that there has been no waiver despite disclosure to a third party. *See Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019); *see also Sony Comput. Ent. Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 634 n.1 (N.D. Cal. 2005) ("[W]here the privilege turns on the nature of the relationship and content of communications with the third party in question, the proponent is in the better posture to come forward with specific evidence explaining why confidentiality was not broken.").

**B. Work Product**

While the attorney-client privilege serves to encourage full and frank discussions between attorney and client, work-product protection promotes the adversary system "by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991). If a document is prepared in anticipation of litigation or trial by a party or its representative, that document will generally be afforded work-product protection and is not discoverable. *See* FED. R. CIV. P. 26(b)(3)(A). Work-product protection is governed by federal law. *See United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). In the Third Circuit, this inquiry focuses on whether the document was prepared or obtained "because of the prospect of litigation." *United States v. Rockwell*, 897 F.2d 1255, 1266 (3d Cir. 1990).

There are two categories of work product: ordinary and opinion. Ordinary work product includes raw factual information and is discoverable only upon a showing of the requesting party's substantial need for the materials to prepare its case and the inability to obtain "the substantial equivalent of the materials" without undue hardship. FED. R. CIV. P. 26(b)(3)(A)(i)-(ii); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). Opinion

work product includes documents that contain or otherwise reveal "the mental impressions, conclusions, opinions, or legal theories" of an attorney or their representative and are afforded near absolute protection. FED. R. CIV. P. 26(b)(3)(B); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) ("[C]ore or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances."). Moreover, because attorneys "often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," the work-product doctrine may also protect materials prepared by non-attorneys. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *see also In re Cendant*, 343 F.3d at 662 ("[T]his protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."); *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998); *United Coal*, 839 F.2d at 966.

Disclosure of work-product materials to a third party does not necessarily waive protection. Because the work-product doctrine serves to protect "the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation," the focus of the waiver inquiry is on whether disclosure was to an adversary. *Westinghouse*, 951 F.2d at 1428. "[I]t is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived." *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011).

### III. DISCUSSION

Plaintiff continues to challenge the assertion of attorney-client privilege and work-product protection over documents and communications shared among Netflix attorneys or between Netflix attorneys and select third parties working on the series. The parties fundamentally dispute whether and to what extent Netflix attorneys can share information with third parties (*e.g.*, Shondaland, JPRA, etc.) regarding the legal risks associated with *Inventing Anna* without

6

destroying a claim of privilege. The Court will address Plaintiff's challenges to the withheld and redacted documents in turn.

### A. Documents Withheld as Privileged or Work Product

Turning first to the withheld documents, Plaintiff uses a color-coding scheme to "organize" the broad swathes of privilege log entries being challenged. (*See* D.I. 114, Ex. 1). Although the most recent versions of the privilege logs are no longer highlighted, the Court will address the challenges and associated documents according to the color-coding scheme originally used by Plaintiff. (*See* D.I. 141, Ex. 3 (current version of supplemental privilege log)).[5]

Communications with Shondaland (Blue). The first category of challenged documents is withheld communications (and attachments) between Netflix attorneys and individuals at Shondaland. (D.I. 114 at 2; *id.* at Ex. 1 (blue highlighting)). There are seventy-two documents in this category, and all but nineteen of those are emails sent by or to Netflix's in-house attorney, Simron Gill. Many of those emails are communications between Ms. Gill and Melissa Lo (or Alison Eakle) at Shondaland regarding pre-publication legal review. (*See* D.I. 141, Ex. 3 at PRIV000031, PRIV000032, PRIV000034, PRIV000042, PRIV000043, PRIV000046, PRIV000047, PRIV000053, PRIV000054, PRIV000063, PRIV000064, PRIV000083, PRIV000100, PRIV000101, PRIV000107, PRIV000111, PRIV000122, PRIV000256, PRIV000259, PRIV000260, PRIV000261, PRIV000263, PRIV000266, PRIV000269 & PRIV000296; *see also* D.I. 93, Ex. 2 ¶ 10 & n.1 (explaining the roles of Ms. Lo and Ms. Eakle)). A few are draft episode scripts sent between Ms. Gill and Ashley Minyard, the series clearance

---

[5] There have been several iterations of privilege logs as this dispute has evolved while pending before the Court. The most recent versions of the supplemental logs indicate entries that remain in dispute with bold typeface. (*See* D.I. 141 at 2). As best the Court can tell, the entries challenged in the most recent privilege log for withheld documents (*id.*, Ex. 3) are the same as those challenged in Plaintiff's color-coded version (D.I. 114, Ex. 1).

7

coordinator, reflecting pre-publication legal review. (D.I. 141, Ex. 3 at PRIV000049 & PRIV000050; *see also* D.I. 93, Ex. 2 ¶¶ 11-12 (explaining the role of Ms. Minyard)).[6] And there are a handful of email communications between Ms. Gill and other Netflix attorneys without anyone from Shondaland (or any other entity) included. (D.I. 141, Ex. 3 at PRIV000025, PRIV000027, PRIV000029, PRIV000030, PRIV000056-PRIV000060, PRIV000068-PRIV000074, PRIV000076-PRIV000081, PRIV000093, PRIV000099, PRIV000115 & PRIV000143). As for the remaining documents in this category, all but three are episode notes and research annotations created by Ms. Lo at the request of Ms. Gill (or notes by Ms. Gill) appearing in documents collected from Ms. Gill. (*See id.* at PRIV000008-PRIV000020 & PRIV000022-PRIV000024). And the remaining three documents are described as "Shondaland Internal Sync Agenda" that contain attorney notes regarding pre-publication legal review to be discussed on monthly calls between Netflix and Shondaland. (*Id.* at PRIV000327-PRIV000329).

As an initial matter, the Court notes that many of these challenged documents are attachments to email communications that Plaintiff does not challenge as privileged. (*See* D.I. 141, Ex. 3 at PRIV000034, PRIV000083, PRIV000107, PRIV000111, PRIV000122, PRIV000049, PRIV000050, PRIV000115 & PRIV000143). Under California law, "[t]he attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco*, 219 P.3d at 741. Because the cover emails are privileged, the attachments at PRIV000034, PRIV000083, PRIV000107, PRIV000111, PRIV000122, PRIV000049, PRIV000050,

---

[6]   One instance of blue highlighting appears for a draft script exchanged between Ms. Gill and Callista Card, director of JPRA. (D.I. 114, Ex. 1 at PRIV000052; *see also* D.I. 93, Ex. 2 ¶¶ 12 (explaining the role of Ms. Card)). This seems to be an error as Plaintiff selected green highlighting to indicate challenges to communications between Netflix attorneys and JPRA. (*See* D.I. 114 at 4; *see also id.*, Ex. 1 at Color Coding Key).

8

PRIV000115 and PRIV000143 are also privileged and not discoverable as part of the communication.[7]

Turning to the remaining documents in the Shondaland category, those documents are properly withheld as privileged. Shondaland researched, wrote, developed and performed other creative work on the *Inventing Anna* series. (D.I. 93, Ex. 2 ¶ 9). Generally, the Court agrees with Defendant that, if done for the purpose of understanding the legal risk of the series, communications between Netflix attorneys and individuals at Shondaland may remain protected from disclosure as "confidential communications" within the meaning of California Evidence Code § 952. Individuals at Shondaland, and Ms. Lo in particular, were critical in providing information to enable Ms. Gill to assess the legal risks facing Netflix from the *Inventing Anna* series. (D.I. 93, Ex. 2 ¶ 9). Indeed, Ms. Lo was hired by Shondaland for the specific purpose of understanding the factual basis for the series. (*Id.*). Obtaining such factual information from Ms. Lo (and others at Shondaland) was necessary for Ms. Gill to fully understand the legal exposure from the series. Stated differently, the communications between Netflix attorneys and Shondaland individuals were reasonably necessary to accomplish the purpose for which Ms. Gill was consulted – *i.e.*, analyzing the legal risks of the series. Therefore, communications between Netflix attorneys and Shondaland relating to the legal risks and exposure from the *Inventing Anna* series are protected from disclosure. The Court's limited *in camera* review confirms this conclusion.[8]

---

[7]  Of course, Plaintiff is not precluded from discovering the factual information contained therein through other non-privileged means.

[8]  In California, *in camera* review is generally not permitted to allow a court to assess a claim of privilege. *See Costco*, 219 P.3d at 744; *see also Citizens for Ceres*, 159 Cal. Rptr. 3d at 802 ("In general, the court cannot require disclosure for in camera review of materials assertedly protected by attorney-client privilege."). Where, as here, the issue is whether privilege has been waived by disclosure to a third party, *in camera* review is permissible. *See OXY Res. Cal. LLC v. Super. Ct.*, 9 Cal. Rptr. 3d 631, 640 (Cal. Ct. App. 2004).

Additionally, the Court finds that the challenged Shondaland documents are protected from disclosure as work product. Ms. Gill's role in connection with the series was to determine whether and to what extent Netflix faced legal exposure from the series. (D.I. 93, Ex. 2 ¶¶ 3 & 5). She was gathering information to understand the potential legal claims that Netflix and Shondaland (and others) may face from *Inventing Anna*. That work is by definition "in anticipation of litigation."[9] Any communications and writings that reflect her mental impressions and opinions about those risks constitute the type of opinion work product that receives the highest level of protection from disclosure. (*See, e.g.*, D.I. 141, Ex. 3 at PRIV00018 & PRIV00030).

In the instances where the challenged Shondaland documents do not contain Ms. Gill's mental impressions, the documents contain ordinary work product because the information was furnished to Ms. Gill to provide said mental impressions. (*See, e.g.*, D.I. 141, Ex. 3 at PRIV000053 & PRIV000054). Despite Plaintiff's suggestion to the contrary (D.I. 155 at 5:19-20), this material is protectable as work product. Netflix attorneys may rely on non-attorneys – including third parties – to assist in preparing materials in anticipation of litigation. *See In re Cendant*, 343 F.3d at 662 ("[T]his protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."); *see also Design with Friends, Inc. v. Target Corp.*, No. 21-1376-SB, 2024 WL 4333114 at *1 (D. Del. Sept. 27, 2024) (Bibas, J. sitting by designation) ("The work product doctrine protects [documents prepared] by or for a party or its representatives."). And Netflix and Shondaland were operating under a confidentiality agreement, whereby Shondaland agreed to provide Netflix with factual information about the series to assist in evaluating legal risks. (D.I. 93, Ex. 2 ¶¶ 4, 8 & 9; *see also* D.I. 155 at 5:15-17, 36:20-37:23 &

---

[9] Although litigation need not be imminent, this was especially true after Netflix received Plaintiff's letter on January 7, 2020, which threatened legal action if the series were released and portrayed Plaintiff "in a defamatory manner." (D.I. 93, Ex. 2 ¶ 6).

10

38:14-41:1). Therefore, the Court finds that these documents fall within the scope of ordinary work-product protection and, despite several opportunities to do so (D.I. 88, 114, 134 & 149), Plaintiff has not made the requisite showing of substantial need to obtain the materials.

        <u>Communications with JPRA (Green).</u>  The next category of challenged documents is withheld communications (and attachments) between Netflix attorneys and individuals at JPRA, a clearance agency hired by Netflix to research the series. (D.I. 114 at 4-5; *see also* D.I. 93, Ex. 2 ¶ 11 ("JPRA is a private research services company that specializes in legal clearances and fact-checking for the entertainment and news industry . . . . JPRA was retained to assist [Ms. Gill] with reviewing and clearing the Series' episode scripts for legal risk, and Netflix obligated JPRA to maintain our correspondence in confidence.")). There are thirty-one documents in this category, and all but seven of those documents are communications sent by or to Netflix's attorney, Ms. Gill. Many of those are emails (or attachments) exchanged between Ms. Gill and JPRA's director, Ms. Card, reflecting research and legal clearance for draft episode scripts. (*See* D.I. 141, Ex. 3 at PRIV000038, PRIV000039, PRIV000041, PRIV000045, PRIV000052, PRIV000062, PRIV000090, PRIV000091, PRIV000097, PRIV000108, PRIV000109, PRIV000112, PRIV000113, PRIV000116, PRIV000117, PRIV000123, PRIV000124, PRIV000203, PRIV000204, PRIV000206 & PRIV000295). Two of the communications are between Ms. Gill and other Netflix attorneys without anyone from JPRA included – where JPRA's pre-publication legal research was circulated among the Netflix legal team. (*Id.* at PRIV000087 & PRIV000089). There is one email from Ms. Gill forwarding JPRA's pre-publication legal research on an episode script to persons not employed by Netflix or JPRA but who worked on the series. (*Id.* at PRIV000085; *see also* D.I. 113, Ex. 7 (screen credits listing individuals that contributed to series)). As for the remaining seven documents in this category, all are draft episode scripts or annotations

11

from JPRA that were sent to (and collected from) Ms. Gill and reflect pre-publication clearance research. (*Id.* at PRIV000001-PRIV000004, PRIV000006, PRIV000007 & PRIV000021).

JPRA specializes in fact-checking research and legal clearance for companies in the entertainment and news industries. (D.I. 93, Ex. 2 ¶ 11). JPRA was specifically hired for the purpose of clearing *Inventing Anna* from a legal perspective and was required to maintain all communications in confidence. (D.I. 93, Ex. 2 ¶ 11; *see also* D.I. 155 at 26:2-6). Ms. Gill sought input from individuals at JPRA, in particular Ms. Card, on scripts to understand any potential legal exposure from what was depicted in a particular episode. In the Court's view, communications between Netflix attorneys and individuals at JPRA are on the same footing as communications with Shondaland. That is, the communications between Netflix attorneys and JPRA individuals were reasonably necessary to accomplish the purpose for which Ms. Gill was consulted – *i.e.*, analyzing the legal risks of the series. Communications with JPRA may remain protected from disclosure, and the Court's *in camera* review confirms this conclusion.

Additionally, as was the case with the Shondaland documents, the Court finds that the challenged JPRA documents are also protected from disclosure as work product. Ms. Gill retained JPRA for the specific purpose of assisting her in reviewing and legally clearing draft scripts of *Inventing Anna* – *i.e.*, to assess the legal exposure from the series. (D.I. 93, Ex. 2 ¶ 11). This legal clearance work with JPRA is thus also properly considered in anticipation of litigation. Documents that reflect Ms. Gill's mental impressions regarding the legal risks are opinion work product and protected from disclosure. (*See, e.g.*, D.I. 141, Ex. 3 at PRIV000006 & PRIV000085). For the remaining documents, those contain factual material created by Netflix's consultant, JPRA, in anticipation of potential litigation that may arise from the series. *See In re Cendant*, 343 F.3d

12

at 662.  The documents are thus protected as ordinary work product, and Plaintiff has failed to make the requisite showing of substantial need to obtain the materials.

<u>Communications with Production Employees (Orange).</u>  The next category of challenged documents is withheld communications (and attachments) between Netflix attorneys and production employees who are not employed by Netflix or Shondaland.  (D.I. 114 at 5; *see also* D.I. 114, Ex. 1 (highlighted)).  There are eleven documents in this category.  Of those, five are emails sent to Ms. Gill from Paola Limon, script coordinator for the series.  (D.I. 141, Ex. 3 at PRIV000146, PRIV000176, PRIV000178, PRIV000213 & PRIV000251; *see also* D.I. 113, Ex. 7 at NETFLIX013329 (listing Ms. Limon's role)).  One is an email from Ms. Gill to Ms. Limon.  (D.I. 141, Ex. 3 at PRIV000212).  One is an email sent to Ms. Gill from Jess Brownell, a producer on the series.  (D.I. 141, Ex. 3 at PRIV000144; *see also* D.I. 113, Ex. 7 at NETFLIX013321 (listing Ms. Brownell's role)).  Two are emails to Ms. Gill from Adi Slepack, a graphic designer on the series.  (D.I. 141, Ex. 3 at PRIV000164 & PRIV000166; *see also* D.I. 113, Ex. 7 at NETFLIX013325 (listing Ms. Slepack's role)).  One is an email to Ms. Gill from Abby Ajayi, a supervising producer on the series.  (D.I. 141, Ex. 3 at PRIV000179; *see also* D.I. 113, Ex. 7 at NETFLIX013397 (listing Ms. Ajayi's role)).  And one is an email to Mr. Peng-Sue, another Netflix attorney, and copying Ms. Gill, from Dasha Orlova, the series post-production coordinator.  (D.I. 141, Ex. 3 at PRIV000209; *see also* D.I. 113, Ex. 7 at NETFLIX013405 (listing Ms. Orlova's role)).  In most cases, these emails include other members of the production team.  And in all but one instance, the communication is described as a production employee seeking advice from Ms. Gill or Mr. Peng-Sue regarding legal clearance for the series.  (*See generally* D.I. 141, Ex. 3*; see also id.* at PRIV000212 (Ms. Gill responding to Ms. Limon's request for legal guidance).

13

As was the case with Shondaland and JPRA, Ms. Gill and other Netflix attorneys exchanged information with production employees as part of the pre-publication legal clearance for the series. (D.I. 93, Ex. 2 ¶ 12). The production employees on these communications were bound to keep information regarding the series confidential. (*Id.*).[10] Having reviewed the supplemental privilege log entries and the accompanying declarations, the Court finds that this exchange of information was also reasonably necessary for Ms. Gill and other Netflix attorneys to understand the legal risks of certain production choices and formulate their opinion on the legal risks associated with *Inventing Anna*. These communications are properly withheld as privileged. The Court's *in camera* review confirms this conclusion.

The challenged documents are also protected from disclosure as work product. Many of these documents contain opinion work product in the form of Ms. Gill's mental impressions regarding the legal clearance process. (*See, e.g.*, D.I. 141, Ex. 3 at PRIV000144, PRIV000164 & PRIV000176). And they all contain ordinary work product. Each of these production employees was working on the series for Netflix in a consulting capacity and under strict confidentiality restrictions. (*See* D.I. 155 at 30:10-18). The production employees sought advice (and provided information to obtain advice) from Netflix attorneys in order to minimize legal risks associated with production decisions for *Inventing Anna*. These documents were thus prepared in anticipation of litigation and are afforded ordinary work-product protection. Plaintiff has not made the requisite showing of substantial need to obtain the materials.

---

[10] The supplemental declaration from Ms. Gill provided the Court with additional information regarding Netflix policies and procedures that govern production employees and their confidentiality obligations, as well as a few sample agreements between Netflix and production employees. (*See* D.I. 141 at 1-2).

Other Communications (Lavender). The next category of challenged withheld documents is communications (and attachments) among Netflix employees or between Netflix and Shondaland employees where an attorney is not included or is only included on the cc line. (D.I. 114 at 5; *see also* D.I. 114, Ex. 1 (lavender highlighting)). There are thirty-two documents in this category and fifteen are emails (and attachments) sent to or from the clearance coordinator, Ashley Minyard.[11] (D.I. 141, Ex. 3 at PRIV000150, PRIV000151, PRIV000152, PRIV000162, PRIV000163, PRIV000167, PRIV000168, PRIV000169, PRIV000170, PRIV000182, PRIV000184, PRIV000185, PRIV000190, PRIV000191 & PRIV000193). Six are emails circulated between employees of Netflix, Shondaland and select members of the production staff, but are not explicitly to or from Ms. Minyard. (*Id.* at PRIV000194, PRIV000195, PRIV000183, PRIV000196, PRIV000322 & PRIV000323). Ten are emails (and one attachment) circulated among Netflix personnel that seek or discuss a Netflix attorney's legal advice. (*Id.* at PRIV000147, PRIV000229, PRIV000306, PRIV000310, PRIV000313, PRIV000317, PRIV000318, PRIV000319, PRIV000320 & PRIV000321). And one is an email from a Netflix attorney to only Netflix employees. (*Id.* at PRIV000324).

Contrary to Plaintiff's suggestion (D.I. 114 at 5), Defendant is not claiming privilege over these documents merely because an attorney is included on the cc line. Rather, as the supplemental privilege log shows, these communications all involve Netflix employees, Shondaland employees and production employees seeking and discussing advice from Netflix attorneys about the legal

---

[11] Plaintiff concedes that communications with Ashley Minyard are privileged. (*See* D.I. 134 at 1 ("Under California law, the attorney client privilege . . . can also cover [confidential] communications between an attorney and the client's agent for purposes of the litigation. For example, based on Netflix's representations, Plaintiff no longer seeks production of communications between Netflix's counsel and Ashley Minyard, an individual who was hired by Netflix to perform a specific job, i.e., a clearance coordinator, on the Series.")).

15

risks associated with *Inventing Anna*. Privileged information can be shared and discussed among Netflix employees and others within the confidential relationship without destroying a claim of privilege. For example, a Netflix employee can forward along Ms. Gill's legal advice to other non-attorneys – who then discuss that advice – and the communication can still be considered privileged. *See, e.g.*, *Zurich Am. Ins. Co. v. Super. Ct.*, 66 Cal. Rptr. 3d 833, 844 (Cal. Ct. App. 2007) ("If legal advice is discussed or contained in the communication between Zurich employees, then to that extent, it is presumptively privileged. A communication reflecting a discussion of litigation strategy which expresses that the strategy is in response to advice of counsel would come within the privilege."). The focus of the inquiry remains on whether sharing the information was reasonably necessary to accomplish the Netflix attorneys' legal purpose. *See* CAL. EVID. CODE § 952. Here, the exchange of information among Netflix, Shondaland and production employees was reasonably necessary for Netflix attorneys to be able to formulate legal advice regarding the risks associated with *Inventing Anna*.[12] The challenged documents are protected from disclosure as privileged. The Court's *in camera* review confirms this conclusion.

These documents are also protected from disclosure as work product. As the Court has noted several times herein, documents prepared in the process of legally clearing the series are considered materials prepared in anticipation of litigation. And the Court has already found that ordinary work-product protection extends to such materials prepared by Shondaland employees and the production employees. Because all documents in this category are communications that seek, provide, relay or discuss legal advice regarding the pre-publication work to understand the

---

[12] And Netflix attorneys are almost always included on the communications – able to weigh in on the discussions about legal advice if needed. Indeed, only three of these communications do not include an attorney.

16

legal risks from the series, they are protected from disclosure as ordinary work product. Plaintiff has not made the requisite showing of substantial need here either.

Insufficient Information (Yellow). There are also four withheld documents that Plaintiff continues to challenge because there is purportedly not enough information provided to evaluate the claim of privilege. (D.I. 114, Ex. 1 (yellow highlighting); *see also* D.I. 141, Ex. 3 (current version of supplemental privilege log)). Those documents are a filming schedule attached to a privileged email to Ms. Gill (PRIV000037), a draft casting grid attached to a privileged email from Ms. Gill (PRIV000095), a photo list attached to a privileged email to Ms. Gill (PRIV000224) and a response to Plaintiff's letter attached to a privileged email from Ms. Gill to another Netflix attorney (PRIV000293).

In all but one instance (PRIV000224), these documents are attachments to privileged communications that Plaintiff does not challenge. Therefore, because the cover email is privileged, the attachments at PRIV000037, PRIV000095 and PRIV000293 are also privileged and not discoverable as part of the communication. *See Costco*, 219 P.3d at 741. As for PRIV000224, that document is described as a photo list attached to a non-responsive but privileged communication to Ms. Gill, whereby the clearance coordinator is seeking legal advice from Ms. Gill regarding the series. (*See* D.I. 141, Ex. 3 at PRIV000224). The Court finds that PRIV000224 is properly withheld as privileged as well.

### B. Documents Redacted as Containing Privileged Information or Work Product

As to the redacted documents, Plaintiff continues to challenge redactions to thirty-six documents. (D.I. 141, Exs. 1 & 2).[13] The challenged documents are either communications solely

---

[13] Although initially raised as one of the many discovery disputes for the Court (D.I. 81 at #3), the parties have apparently reached a resolution over their dispute regarding the reporter's privilege under New York law. (*See* D.I. 113 at 1 (Defendant's supplemental letter brief

among Netflix employees, or communications between Netflix and Shondaland employees, with redactions to protect those portions of the documents relaying legal advice from attorneys. (*See* D.I. 141, Ex. 1 at 1-5; *see also* D.I. 141, Ex. 2 at 9-28). Each of the remaining challenged entries involves a discussion of legal advice relating to the production or marketing of *Inventing Anna* – legal advice that ultimately originated from a Netflix attorney.

Having reviewed the supplemental privilege logs for the redacted documents, the Court concludes that Defendant has adequately shown that the information is either privileged or work product (or both) and is therefore properly redacted. For the communications and documents exchanged between only Netflix employees, the legal advice being discussed originated from a Netflix attorney and relates to the ongoing pre-publication clearance review. (*See* D.I. 141, Ex. 1 at NETFLIX013498, NETFLIX013501, NETFLIX013503, NETFLIX013505 & NETFLIX013507; D.I. 141, Ex. 2 at NETFLIX009958, NETFLIX010207 & NETFLIX010211). In each of those instances, the Netflix employees are specifically discussing a Netflix attorney's legal advice that has been forwarded along for discussion. Redaction of that forwarded email is proper to protect attorney-client privilege, as is redaction of the Netflix employees' discussions of the privileged email.

As for the remaining redacted documents, those are all communications between Netflix employees and Shondaland employees. (D.I. 141, Ex. 1 at NETFLIX013509, NETFLIX013516, NETFLIX013523, NETFLIX013529 & NETFLIX013535; D.I. 141, Ex. 2 at NETFLIX010785,

---

stating that "[t]he parties have also come close to reaching a resolution on Netflix's redactions based on the reporter's privilege"); D.I. 114 at 1 (Plaintiff's supplemental letter brief stating that the parties "have agreed in principle on a resolution of the dispute over the reporter's shield protection and hope that that issue can be fully resolved informally")). Plaintiff has since withdrawn her challenge for the last two documents (NETFLIX001628 & NETFLIX001652). (D.I. 155 at 17:16-19:13).

NETFLIX010790, NETFLIX010795, NETFLIX010798, NETFLIX011832, NETFLIX011838, NETFLIX011843, NETFLIX011847, NETFLIX011970, NETFLIX011999, NETFLIX012026, NETFLIX012057, NETFLIX012086, NETFLIX012141, NETFLIX012168, NETFLIX012196, NETFLIX012224, NETFLIX012251, NETFLIX012277, NETFLIX012303, NETFLIX012329, NETFLIX012355 & NETFLIX12380). These communications are also redacted to protect forwarded legal advice from a Netflix attorney relating to the pre-publication review, marketing or production, as well as to protect Netflix and Shondaland employees' discussion of that legal advice. As previously discussed, Netflix may exchange information and legal advice relating to *Inventing Anna* with Shondaland employees without waiving attorney-client privilege. These redactions are therefore also proper.

The Court also finds that the redacted information is protected from disclosure by the work-product doctrine. Each of the challenged entries involves a communication that relates to a pre-publication review of *Inventing Anna* or of its marketing materials, which was done to "advise on legal risks in anticipation of potential litigation." (D.I. 93, Ex. 2 ¶ 5). The communications contain Netflix attorneys' mental impressions, as well as factual information provided by Netflix or Shondaland employees to assist the attorneys in being able to formulate their legal advice. In the Court's view, the information redacted was either prepared by Netflix attorneys in anticipation of litigation or by Netflix or Shondaland employees for Netflix attorneys to assist in their understanding of litigation risks associated with *Inventing Anna*. *See In re Cendant*, 343 F.3d at 662 ("[T]his protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."). The redacted information is thus protected from disclosure by the work-product doctrine. For any information that is not protected as opinion work product, Plaintiff has failed to make the requisite showing of substantial need to obtain the

19

information. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (attorney work product given "almost absolute protection from discovery"); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("[A]ny slight factual content that [opinion work product] items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.").

Finally, for nearly all of the challenged documents (withheld and redacted), Defendant also argues that disclosure of privileged information to the individuals at Shondaland, JPRA and others does not destroy the privilege because of the common-interest doctrine. (*See* D.I. 93 at 2 ("These communications are also protected against waiver by the common interest or joint defense doctrine . . . ."); D.I. 113 at 2 ("These challenged documents are protected under three separate privileges: attorney-client, work product doctrine, and the common interest privilege." (footnote omitted))). The common-interest doctrine operates to prevent waiver in situations where a privileged communication is shared beyond the attorney-client relationship. *See In re Pac. Pictures*, 679 F.3d at 1129. Because the challenged documents are protected communications under California Evidence Code § 952 and are also separately protected from disclosure as work product, the Court declines to reach the common-interest doctrine as an independent basis for protection.

IV.   **CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's request to compel is DENIED.

_____<br>UNITED STATES MAGISTRATE JUDGE