# Exhibit 33

WEINER
03.04.25
Exhibit 400
Jillian Doctor

## OPTION PURCHASE AGREEMENT
## NON-PRECEDENTIAL, NON-CITABLE

This Agreement, dated as of June 12, 2018, is between Rachel Deloache Williams ("Owner"), Creative Artists Agency, 2000 Avenue of the Stars, Los Angeles, CA 90067, Attention: Michelle Weiner (michelle.weiner@caa.com), and Home Box Office, Inc. ("HBO"), 2500 Broadway, Suite 400, Santa Monica, California 90404 with respect to the article entitled "*As an Added Bonus, She Paid for Everything: My Bright-Lights Misadventure with a Magician of Manhattan*" written by Owner and published in Vanity Fair (the "Article") and any book or memoir based thereon (the "Book") such work, and the title, themes, stories, dialogue and all of the other contents thereof, and the characters therein (to the extent owned and/or controlled by Owner, inasmuch as the Article and Book are works of non-fiction), and all translations (to the extent owned and/or controlled by Owner), adaptations, and versions thereof, whether now existing or hereafter created (collectively with the Article and Book, the "Work") in connection with the possible production of a one (1) hour series ("Series") project tentatively entitled "MAGICIAN OF MANHATTAN" (the "Project").

1. <u>CONDITIONS PRECEDENT</u>

HBO's obligations hereunder are subject to (a) its receipt, in form and pursuant to terms and conditions satisfactory to HBO, of copies of all chain of title documents with respect to the Work, including without limitation the executed Publisher's Release attached hereto (or other form of publisher release acceptable to HBO), and (b) HBO's clearance of the chain-of-title of the Work (collectively "Conditions Precedent"). No act or omission of HBO, including, by way of example, making any payments hereunder prior to satisfaction of the Conditions Precedent, shall be deemed a waiver by HBO of any Condition Precedent. If HBO, in its sole discretion, elects to waive any Condition Precedent, such waiver shall only be valid if expressly agreed to by HBO in writing and shall only serve as a waiver of the specific condition so waived.

2. <u>OPTION</u>

Owner hereby grants to HBO (and its successors, licensees and assigns) the irrevocable and exclusive option (the "Option") to purchase all rights (except for the Reserved Rights specified below) in and to the Work as set forth in section 4 hereof upon and subject to the following terms and conditions:

    (a)    <u>Option Period</u>

        (i)    The initial option period shall commence on the date hereof and shall extend through and including the date eighteen (18) months after the date that

S:\Projects\M-P\Magician of Manhattan\Williams Rights Option-Purchase 4.doc:(09/27/2018)

HBO receives an original copy of this Agreement signed by Owner (such period being hereinafter referred to as the "Initial Period");

    (ii)  The Option includes the right of HBO to extend the Initial Period for an additional eighteen (18) months (the "Extension Period") upon written notice from HBO to Owner at any time prior to the expiration of the Initial Period, promptly followed by payment of the amount set forth in section 2(e)(ii).

The Initial Period and the Extension Period are hereafter referred to collectively as the "Option Period".

    (b)  Notwithstanding the foregoing, the Option Period shall be extended automatically (without additional payment to Owner and provided that written notice is given within a reasonable period of time and such notice shall not be a condition subsequent to the effectiveness of such extension, provided however, that HBO's inadvertent failure to provide such written notice shall not constitute a breach hereof) for (i) an additional period equal to the duration of any industry-wide event or events of "force majeure" which hampers, impairs or interferes with the ability to develop the Project or enter into any agreement with any third party for the development of the Project, or (ii) an additional period, not to exceed twelve (12) months, for any event or events of "force majeure" which specifically hampers, impairs or interferes with HBO's (and its successors, licensees and assigns) ability to develop the Project or enter into any agreement with any third party for the development of the Project. (As used herein, "force majeure" shall mean any riot, strike, labor dispute, epidemic, act of God, or any other similar condition beyond HBO's or such third party's control.) In the event the Option Period would otherwise expire on a Saturday, Sunday, national holiday or during the period between Christmas Eve and New Year's Day, said period or extension shall be extended without notice until the end of the next following business day.

    (c)  <u>Claim or Litigation</u>  Notwithstanding anything to the contrary herein, and without limiting any other rights or remedies that HBO may have at law, in equity or otherwise, in the event there is any claim and/or litigation which if proven to be true, would involve a breach of any representation, warranty and/or agreement of Owner hereunder, then all of HBO's obligations hereunder shall be suspended, and any period hereunder and the last date by which HBO may exercise any of its rights or options (including without limitation the Option Period), make any payments (including without limitation the Purchase Price) or give any required notice hereunder shall be automatically extended until no such claim and/or litigation is outstanding (provided, however, that with respect to claims, such period shall not exceed nine (9) months unless a complaint has been filed or agreement to arbitrate has been reached or any other judicial proceeding has been initiated).

RDW121433

Rachel Deloache Williams  
"MAGICIAN OF MANHATTAN"  
As of June 12, 2018

Page 3  
NON-PRECEDENTIAL  
NON-CITABLE

(d) HBO (and its successors, licensees and assigns) may, during the Option Period, undertake pre-production and production activities in connection with any of the rights which are subject to the Option, including, but not limited to, the preparation and submission to others of treatments, adaptations, teleplays and/or screenplays based on the Work.

(e) Option Payments: On the condition that Owner is not in uncured material breach hereof, HBO shall pay to Owner, and Owner shall accept, in full consideration of Owner's grant to HBO of the Option and all other rights granted to HBO hereunder and all of Owner's representations, warranties and agreements hereunder, the amounts set forth below.

(i) With respect to the Option, HBO shall pay to Owner the sum of Thirty-five Thousand Dollars ($35,000) (the "Initial Option Fee") promptly following HBO's receipt of an original copy of this Agreement signed by Owner. The Initial Option Fee shall be credited toward and applied against the Purchase Price (as defined hereinbelow).

(ii) With respect to the Extension Period, HBO shall pay to Owner the aggregate amount of Thirty-five Thousand Dollars ($35,000) (the "Extension Fee") promptly following HBO's written notice to Owner pursuant to section 2(a)(ii). The Extension Fee shall not be credited toward or applied against the Purchase Price (as defined hereinbelow).

3. PURCHASE PRICE/EXERCISE OF OPTION

(a) Purchase Price (*strictly on a non-precedential, non-citable*): HBO may exercise the Option by (i) an HBO executive giving written notice to Owner at the address set forth above at any time on or before the expiration of the Option Period, and (ii) making payment to Owner of the aggregate amount of Three Hundred Fifty Thousand Dollars ($350,000) (the "Purchase Price") less the Initial Option Fee. Upon HBO's exercise of the Option, HBO shall acquire all rights in and to the Work as set forth in section 4, below.

(b) Contingent Compensation: Provided that Owner is not in uncured material breach or default hereof and that HBO produces a Series based on the Work, Owner shall be entitled to receive additional compensation in an amount equal to five percent (5%) of one hundred percent (100%) of net proceeds, if any, from the distribution of the Series ("Owner's Participation"). Such Net Proceeds shall be fully vested once the Series is ordered to production and will be defined and Owner's Participation will be

S:\Projects\M-P\Magician of Manhattan\Williams Rights Option-Purchase 4.doc:(09/27/2018)

Rachel Deloache Williams  
"MAGICIAN OF MANHATTAN"  
As of June 12, 2018

Page 4  
NON-PRECEDENTIAL  
NON-CITABLE

computed, accounted for and paid in accordance with HBO's standard definition of Net Proceeds attached hereto as Exhibit "B". With the exception of material financial terms, HBO agrees to consider Owner's proposed changes to the definition's language, provided that HBO does not commit to revise the definition in response to Owner's comments, and unless and until HBO agrees in writing to a specific revision or revisions, the definition will remain the then standard definition.

(c) <u>Royalty</u>: Provided that Owner is not in uncured material breach or default hereof and that HBO produces a Series based on the Work, then Owner shall be entitled to receive a series royalty of Five Thousand Dollars ($5,000) for each original primetime episode of the Series (excluding the initial episode) produced payable following completion of principal photography pursuant to HBO's customary practices.

(d) <u>Theatrical Feature/MOW/Mini-Series Bonus</u>: Provided Owner is not in uncured material breach or default hereof and that HBO produces a "Feature" (as hereinafter defined), a full-length, domestic, live-action, standalone (e.g., as opposed to one or more episodes of the Series) television prequel, sequel or remake MOW or mini-series based on the Series (each, a "Subsequent TV Movie") then Owner shall be entitled to a bonus payment in connection with the exploitation of such Feature and/or Subsequent TV Movie to be negotiated and agreed upon in good faith between the parties within HBO's customary parameters. "Feature" shall mean a feature-length motion picture based on the Work and/or the Project incorporating the Work produced for initial general theatrical release, as an HBO film, in theaters before paying audiences (and excluding press and industry screenings, festival exhibitions, exhibitions solely for award consideration and other similar exhibitions).

(e) <u>Spinoffs</u>: If the first Series year is produced based on the Work, and provided that Owner is not in uncured material breach or default hereof and a spin-off series is subsequently produced ("Spin-Off"), then Owner shall be entitled to receive the following in connection with such Spin-Off:

(i) In the case of a Spin-Off series that has a character that also appears in both the Work and the Series, a per episode royalty for such Spin-Off equal to fifty percent (50%) of Owner's applicable royalty for the Series pursuant to section 2(c) above and a share of contingent compensation for such Spinoff equal to fifty percent (50%) of Owner's Participation.

(ii) In the case of a Spinoff that has a character that also appears in the Work but does not appear in the Series, a per episode royalty for such Spin-Off equal to twenty-five percent (25%) of Owner's applicable royalty for the Series pursuant

to section 2(c) above and a share of contingent compensation for such Spin-Off equal to twenty five percent (25%) of Owner's Participation.

4. **GRANT OF RIGHTS**

If the Option is exercised, pursuant to section 3(a) above, HBO (and its successors, licensees and assigns) shall own, and subject only to such exercise, Owner assigns and sells to HBO (and its successors, licensees and assigns), exclusively, in perpetuity and throughout the universe, all rights, title and interest in and to the Work (the "Rights"), except for the Reserved Rights set forth in section 5, below. Without limiting the generality of the foregoing, the Rights in the Work herein granted include:

(a) <u>Audiovisual Works</u>: The right to produce audiovisual works of all types now known or hereafter devised, and sequels thereto and remakes thereof and all other types of derivative works based thereon, intended for exploitation in any medium now known or hereafter devised and all music and music publishing rights, soundtrack album and other soundtrack exploitation rights, merchandising rights and promotional and advertising rights.

(b) <u>Copyrights/Exploitation Rights</u>: With respect to works produced pursuant to the rights granted in subsection (a) above, all copyrights, neighboring rights, trademarks and any and all other ownership and exploitation rights in the Work now or hereafter recognized in any and all territories and jurisdictions (including by way of illustration only, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public) and the right to exploit such works in all media, markets and languages and in any manner now known or hereafter devised.

(c) <u>Owner Portrayal</u>: Owner hereby: (a) consents to the use of Owner's persona and any and all personal experiences, anecdotes, incidents, situations, materials, information and events contained in the Work or otherwise contributed, provided, conveyed and/or relayed by Owner ("Life Events"); and (b) grants to Producer (and its successors, licensees and assigns) the irrevocable and unconditional right to cause one or more performers to portray Owner, under Owner's name or a fictitious name, and to depict Owner's likeness, personality, actions and Life Events, including, without limitation, the fictionalization, dramatization and/or adaptation thereof; in and in connection with the Pilot/Series and any other work or production based on and/or derived from the Work, the exhibition, distribution and exploitation thereof and any and all rights therein and thereto, and related advertising and publicity, in any and all media, whether now known or hereafter devised, throughout the universe, in perpetuity. Owner represents and warrants that Owner has not granted any rights in and to the Life Events to

RDW121436

any third party. Owner agrees that Owner will not assert, institute or maintain any claim or action against Producer or its licensees, assigns, or parent, subsidiary, affiliated or related entities, on the grounds of right of privacy or publicity, defamation, libel, slander, negligent or intentional infliction of emotional distress, or any other similar or dissimilar claim or action; and Owner hereby releases HBO, Producer and their respective successors, licensees, assigns and parent, subsidiary, affiliated and/or related entities, from any and all such claims arising in connection with any alleged or actual portrayal, representation, impersonation or depiction of Owner or any alleged or actual use of Owner's likeness, personality, actions and/or Life Events in or in connection with the Pilot/Series or any other work or production based on and/or derived from the Work. Owner understands that Producer shall incur substantial expense in reliance upon this grant of rights, and Owner agrees that Producer may proceed in reliance thereon.

(d) <u>Alteration Rights</u>: HBO (and its successors, licensees and assigns) shall have the right (to be exercised in its sole discretion) to adapt, modify, fictionalize, add to or take from the Work. In this regard, Owner hereby waives the exercise of any provision of law known as the "droit moral" or any similar law which may now or hereafter be recognized in any country or place, and agrees not to institute, support, maintain or permit any action or proceeding on the ground that any motion picture, television program, radio program, or other version of the Work produced or exploited by HBO or HBO's successors, licensees or assigns constitutes an infringement of Owner's droit moral or is in any way a defamation or mutilation of the Work or any part thereof or contains unauthorized variations, alterations, modifications, changes or translations therein.

(e) <u>Name, Likeness and Biography</u>: Owner hereby grants to HBO (and its successors, licensees and assigns) the non-exclusive right forever and throughout the universe to use, and to license others to use, Owner's name, biography and likeness for informational purposes or in connection with the advertising, exploitation and publicizing of the Work, the Project, if any, and in conjunction with the exploitation of any of the rights herein granted to HBO. Such use of Owner's name, biography and likeness may be made either alone or in conjunction with the advertising, exploitation and publicizing of the name, products and/or services of any licensee, distributor or sponsor of the Project, if any, but not as a direct or implied endorsement of any such products or services. Owner shall have the right to furnish or approve Owner's non-professional biography used in connection with the Project, provided that approval is not unreasonably withheld and that HBO shall not be prevented from referring to Owner's prior credits in the entertainment industry. No casual or inadvertent failure by HBO, or any of its successors, licensees, or assigns, to accord Owner biography approval (by reason of shortage of time or otherwise) shall constitute a breach of this Agreement, and no failure of any person, firm or entity other

provision of this Agreement so affected shall be curtailed and limited only to the minimum extent necessary to permit compliance with the minimum requirement; no other provisions of this Agreement shall be affected thereby and all such other provisions shall continue in full force and effect.

(c) This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings between the parties hereto with respect to the subject matter hereof.

(d) This Agreement may not be modified except by an instrument in writing signed by both parties hereto.

(e) No waiver of any term or condition of this Agreement shall be construed as a waiver of any other term or condition, nor shall any waiver of any default under this Agreement be construed as a waiver of any other default.

(f) This Agreement shall in all respects be governed and controlled by the laws of the State of New York applicable to agreements executed and to be performed entirely therein.

(g) Captions are used herein solely for convenience and shall not be deemed to affect in any manner the meaning or intent of this agreement or any provision hereof.

(h) This Agreement may be executed in two or more counterparts each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

HOME BOX OFFICE, INC.

By: _____
Its: Senior Vice President

_____
RACHEL DELOACHE WILLIAMS

Received
OCT 0 8 2018
Barbara Blosveren

S:\Projects\M-P\Magician of Manhattan\Williams Rights Option-Purchase 4.doc:(09/27/2018)

RDW121450